THE JACKSON-WALKER COAL AND MATERIAL COMPANY
et al., *Appellees*, v. H. B. MILLER et al., *Appellants*.

No. 17,956.

SYLLABUS BY THE COURT.

1. DEED—*Mutual Mistake—Limitations in Actions to Correct.*
   The decision in *Duvall v. Simpson*, 53 Kan. 291, 36 Pac. 330,
   relating to the period of limitation in actions to correct a
   mistake in a conveyance of land is followed.

2. EVIDENCE—*Sufficient to Support Findings.* The evidence is
   examined and held sufficient to support the findings of fact.
   It is also held that the findings support the judgment.

Appeal from Shawnee district court, division No. 2.
Opinion filed February 8, 1913. Affirmed.

*J. E. Jones*, of Osage City, and *Wheeler & Switzer*,
of Topeka, for the appellants.

*William R. Smith, Owen J. Wood*, and *Alfred A.
Scott*, all of Topeka, for the appellees.

The opinion of the court was delivered by

BENSON, J.: The appellants ask for the reversal of
a judgment correcting a mistake in a deed of convey-
ance made by the Osage Carbon Company to H. B.
Miller.

The appellants contend that the cause of action is
barred by lapse of time, that the mistake was not a
mutual one, and that Clyde W. Miller is a *bona fide* pur-
chaser of the land from H. B. Miller for value and
without notice of the mistake, relying upon the terms
of the deed as written.

Early in March, 1899, H. B. Miller and his brother,
W. W. Miller, negotiated with the Osage company for
the purchase of the east half of section 14, township
16, range 14, in Osage county, and about 1300 acres of
other land, at the price of $10 per acre, the vendor re-
serving the coal and mineral on the half-section de-

scribed. This coal was then worth $25 per acre. It was agreed that one quarter in section 14 should be conveyed to each of the Millers, together with a part of the other land as divided between them. The deeds were prepared in accordance with this agreement, each containing, however, a printed clause purporting to reserve all the coal and mineral upon all the land, but by another clause written in each deed following the covenants of warranty this reservation was expressly limited to the quarter in section 14 conveyed thereby. Before the deeds were delivered, upon the request of the grantees, changes were made in both deeds so as to convey to each of the grantees the quarter in section 14 originally described in the deed to the other. While these changes were made in the descriptions in the deeds, by mutual mistake corresponding changes were not made in the reservation clauses. The deeds were then delivered and were recorded on May 1, 1899. Taxes were assessed on the mineral reserves on the quarter-section in controversy for the year 1905, and the years following to and including the year 1910, which were paid by the Osage company and its successors in the title thereto. Taxes upon the surface of the land were paid by H. B. Miller.

In the year 1905, H. B. Miller offered this quarter-section for sale, with a reservation of the coal thereon. On receiving an offer for the land including the coal, he said he would try to procure a release of the coal reserve. Some time afterward he endeavored to obtain a quitclaim deed from the Cherokee company, then holding the title of the reserve, but the negotiations failed. A letter from that company saying that it was unwilling to dispose of the mineral rights and declining to make the conveyance requested was received by H. B. Miller June 5, 1906, and was read by his son, Clyde W. Miller. In May or June, 1910, H. B. Miller, through his attorney, notified the Cherokee company

that he claimed the coal measures underlying the southeast quarter of section 14, the land which had been conveyed to him by the Osage company. This was the first notice the plaintiffs, or either of them, ever received of any mistake in the deed. The defendants first discovered the mistake early in the year 1910. Just before this suit was brought the Jackson-Walker company, plaintiffs' successor in the title to the coal reservations, undertook to sink a shaft for mining coal on the quarter conveyed to W. W. Miller, but were warned by his attorney to desist.

In the summer of 1906, Clyde W. Miller had a conversation with a representative of the Cherokee company with a view of purchasing the coal reserve in controversy, but without success. This was before he had read the letter above referred to. H. B. Miller held the possession of the land until March, 1910, when, for a consideration of $6000, he conveyed it, without reservation, by warranty deed to Clyde W. Miller, who has been in possession since.

It is argued by appellants that the statutory period allowed for the commencement of the action to correct the mistake began to run at the delivery of the deed, and that it was therefore barred by limitation before the suit was brought. Subdivision 6 of section 17 of the civil code, prescribing a limitation of five years in cases therein referred to, is cited as controlling. Decisions are cited from other states which appear to support the claim, but we need not go far afield for authorities, for the question has been decided by this court. In *Duvall v. Simpson*, 53 Kan. 291, 36 Pac. 330, it was held:

"While the lapse of time will bar equitable relief against a mistake made in describing land intended to be conveyed, the period of limitation will not begin to run until the discovery of the mistake, or until the time at which, by the exercise of reasonable diligence, it might have been discovered." (Syl.)

The appellants insist that this decision is opposed to the terms of the statute and to a later decision in *Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051. The general expressions in the latter opinion relied upon by appellants can not be held to overrule the decision of the particular question in the Duvall case. The grounds of the decision are stated in the opinion, and need not be restated here. That decision has stood for nineteen years and the legislature has not seen fit to change the rule, and it will be adhered to.

It is argued that the record of the deed imparted notice of the mistake contained in it, and therefore that it must be held that the plaintiffs discovered the mistake by the constructive notice afforded by the record. The record certainly gave no better notice of the mistake than the original instrument. The argument was made in the Duvall case that the statute began to run at the delivery of the deed, but that view was not sustained. The conveyance in that case had been made more than five years before the suit was brought to correct the mistake.

The finding that the mistake was a mutual one is sustained by the evidence. The grantor intended to reserve the coal upon the land in section 14, conveyed by the deed. This was agreed to and understood by the grantee, as found by the court upon competent testimony. The clause as written reserved coal upon land not included in the conveyance, and was plainly a mistake, easily accounted for by the change made in the deed after it was prepared. Testimony is referred to tending to show that the grantee understood that there was to be no reservation, but any conflict in the evidence is settled by the finding.

The district court found that Clyde W. Miller at the time he received the conveyance had actual knowledge that the plaintiffs in this action claimed to own the coal reserve, and was a purchaser with notice of such claim.

While complaint is made of the finding, it is sustained by evidence and can not be set aside here.

Upon the facts found by the district court, supported by competent evidence, the conclusions of law and judgment thereon accord with the well-settled principles of equity. The judgment is therefore affirmed.

WEST, J. (dissenting) : It was decided in the Duvall case (53 Kan. 291, 36 Pac. 330) that the statute begins to run when the mistake is or should be discovered; but after thorough consideration and reconsideration it was unanimously held in the Grain Company case (68 Kan. 585, 75 Pac. 1051) that the court has no power to add a clause to the statute of limitation. Being oftentimes reminded that it is well enough to let the legislature make the laws, I abide by the later decision.