No. 18,684.

THE CITY OF HUTCHINSON v. CLINTON C. HUTCHINSON
(E. M. TRAYLOR, *Appellee;* W. B. LOWRANCE, *Appellant*).

### SYLLABUS BY THE COURT.

1. LACHES—*No Bar to Relief Where Parties are Not Prejudicially Affected by the Delay—Foreclosure of Mortgage.* The doctrine of laches is equitable in character, and mere lapse of time is not a bar to relief when the rights of the parties to the suit have not been prejudicially affected by the delay, the rights of innocent third persons will not be prejudicially affected, and nothing has occurred to create an equitable estoppel against the moving party or to create an equity in favor of his adversary.

2. SAME—*Right of Action Suspended by Legal Proceedings—Tolls Statute of Limitations.* Where the character of legal proceedings is such that the law restrains one of the parties from exercising a legal remedy against another, the running of the statute of limitations applicable to the remedy is postponed, or, if it has commenced to run, is suspended, during the time the restraint incident to the proceedings continues.

3. SAME. A claimant of title to mortgaged premises brought suit in 1891 to quiet title against the mortgagor and to cancel the mortgage, which had not matured. The mortgagor removed the cause to the circuit court of the United States. In 1897 the cause was remanded to the state court, where it was neglected by all parties for ten years. In 1908 a grantee of the mortgagor procured a judgment in his favor, quieting his title against the plaintiff, but no judgment was taken against the mortgagee, who had answered in the suit that the mortgage was a lien on the land in controversy. In 1910 the assignee of the mortgage was granted leave to file a cross-petition, in which foreclosure was prayed for. *Held,* the remedy was not barred by laches or by the five-year statute of limitations.

Appeal from Reno district court; CHARLES E. BRANINE, judge. Opinion filed June 6, 1914. Reversed.

*Charles Blood Smith, Samuel Barnum,* both of Topeka, and *F. Dumont Smith,* of Hutchinson, for the appellant.

*Frank L. Martin,* and *Van M. Martin,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action in its present form is one to foreclose a mortgage of a tract of land which at one time constituted Prospect Park in the city of Hutchinson. The holder of the mortgage was defeated and appeals.

The land was formerly owned by C. C. Hutchinson. He dedicated it to public use for a park by a plat of the city of Hutchinson filed March 15, 1872. In the year 1888 he procured an order from the board of county commissioners purporting to vacate the park, and on August 1, 1888 executed the mortgage in suit, which was in form a trust deed to the Kansas Loan & Trust Company to secure a note payable to the order of E. M. Sheldon. In April, 1891, the city of Hutchinson commenced an action to annul the vacation of the park, to cancel the mortgage, and to quiet the city's title to the land. Hutchinson, Sheldon, and the Kansas Loan & Trust Company were made parties defendant. Sheldon disclaimed, having disposed of the note to another. The Kansas Loan & Trust Company disclaimed for itself, but answered that it had an interest in the premises as trustee under the trust deed, for the holder of the note, and denied generally the allegations of the petition. In July, 1891, Hutchinson procured an order removing the cause to the circuit court of the United States. After consideration of the removal by the circuit court and by the circuit court of appeals the cause was remanded to the district court of Reno county. This was probably in 1897. For the succeeding ten years the action slumbered. In April, 1907, Hutchinson took steps to supply the missing files

and procured an order that the transcript prepared for use in the United States court might stand in place of the original papers. In the meantime Hutchinson had conveyed the land to J. G. Wilson, who had sold a one-half interest to E. M. Traylor. On June 17, 1908, Wilson and Traylor were substituted for Hutchinson as parties to the suit and a judgment was rendered in their favor quieting their title against the plaintiff, the city of Hutchinson. No judgment was taken against Sheldon or the Kansas Loan & Trust Company as trustee. In April, 1910, W. B. Lowrance, who had purchased the note and had secured possession of the trust deed, was substituted for Sheldon and the Kansas Loan & Trust Company. In September, 1910, he filed an answer and a cross-petition in which he asked for a foreclosure of the trust deed. By this time Traylor had purchased Wilson's interest in the land. Traylor filed a plea to the jurisdiction, asserting that Sheldon and the Kanas Loan & Trust Company had abandoned the litigation, that the judgment of June, 1908, was a final disposition of the case which excused, discharged and concluded all parties to the suit, that afterwards no action was pending, and that the orders permitting Lowrance to come into the case and to file his cross-petition in foreclosure were unauthorized and void. This plea was overruled, and a demurrer to the cross-petition was also overruled. Traylor then filed an answer which reasserted the facts embraced in the plea to the jurisdiction, and then pleaded laches and the statute of limitations in bar of Lowrance's right to relief. A trial was had, at the conclusion of which the court made findings of the essential facts substantially according to the foregoing statement, and deduced the following conclusion of law:

"I conclude as a matter of law, from the foregoing facts, that the note and mortgage described in finding No. 5 are barred by the Statute of Limitations and by the laches of the holders thereof and that the pendency of this present action has not tolled the run of the

Statute of Limitations and that the defendant Lowrance is not entitled to recovery upon his said cause of action or to have the said mortgage foreclosed.''

Traylor presents no assignments of error concerning the several matters adjudicated against him, and consequently the two subjects embraced in the trial court's conclusion of law are all that are open to consideration. That of laches is easily disposed of.

· The doctrine of laches is equitable in character, and the findings of fact present no subject of equitable consideration in Traylor's favor except lapse of time. Wilson and Traylor purchased with full knowledge of the existence of the mortgage and subject to it. The evidence shows that Wilson paid Hutchinson $100 for a quitclaim deed of the park, and that Traylor paid Wilson $100 for a quitclaim deed of a one-half interest in it. At that time the city's suit was pending. Conceding that this suit was neglected and dormant, it was sufficiently alive in 1908 for Wilson and Traylor to take judgment in it establishing their title against the city. When this judgment was taken an answer was on file by the Kansas Loan & Trust Company as trustee, asserting an interest in the premises for the protection of the holder of the note secured by the trust deed. Instead of undertaking to secure a final disposition of the case, Wilson and Traylor took judgment against the city alone, and as the court ruled, the case was left open to the substitution of Lowrance in place of the original holders of the paper and proceedings on his part to enforce his lien. The result is that Traylor is in no position to complain of slackness in the conduct of the litigation.

There has been no fraud on the part of any one. There has been no intervention of the rights of innocent third persons, no death or disability of party, no loss of testimony or increased difficulty of defense, no ignorance of facts or rights, no change of conditions or relations upon which to found an estoppel against

Lowrance or to build up an equity in favor of Traylor. Lapse of time has had no prejudicial effect upon the rights of the parties, and each one occupies the precise situation and enjoys all the privileges and advantages of his predecessors in interest. Laches, therefore, does not bar foreclosure of the mortgage. (*Harris v. Defenbaugh*, 82 Kan. 765, 109 Pac. 681; *Dusenbery v. Bidwell*, 86 Kan. 666, 121 Pac. 1098.)

The question whether or not the statute of limitations is a bar to the foreclosure is more difficult of solution.

In April, 1891, the city of Hutchinson commenced its action against the mortgagor and the mortgagee to cancel the mortgage and to quiet the city's title to the mortgaged premises. The mortgagee answered with a general denial of the city's claim and an assertion that the mortgage created an interest in the land. At that time the note secured by the mortgage was not due, and no occasion existed to ask for a foreclosure. True, a coupon was two months overdue, and the holder of the mortgage had an option to declare the whole sum secured by the mortgage to be due. He was not obliged to exercise his option so soon, however, and so far as the record shows the debt did not mature and the statute of limitations could not commence to run for considerably more than two years after the existence and validity of the mortgage as a lien were assailed. The mortgagor did not contest the answer of the mortgagee, and the action in which the answer was filed was still pending when Lowrance, in legal effect, expanded the pleading so that it became a cross-petition in foreclosure. After the city commenced its suit it would have been a necessary party, as a claimant of full title, to any independent action brought to foreclose the mortgage, and the policy of the law would have demanded that the proceedings in any such action should be arrested to await the determination of the prior suit to quiet the city's title. The same would have been true

if a cross-petition to foreclose had been filed in the city's suit, and the mortgagee was not obliged, as a matter of ceremony, to institute a proceeding which could not properly be prosecuted with effect. It is true that the mortgagee might have reduced the note to judgment in an action against Hutchinson alone, but no rule of law or consideration of justice required the mortgagee to abandon his security, and he was virtually. restrained from enforcing it so long as the city's suit was undetermined.

That the running of the statute of limitations may be postponed, or may be suspended after it has commenced to run, for causes not specified in the statute, is well established. The basis of such exceptions was well stated by Mr. Justice Strong in the case of *United States v. Wiley*, 78 U. S. (11 Wall.) 508:

"In *Hanger v. Abbott* it was decided that the effect of the war was to suspend the running of statutes of limitation during its continuance, in suits between the inhabitants of the loyal States and the inhabitants of those in rebellion. The same doctrine was repeated in substance in *The Protector*. It would answer no good purpose to go behind the decisions and review the reasons upon which they are founded. We are still of opinion that they rest upon sound principle. But it is said those decisions only rule that the war suspended the statutes' running against claims by one citizen upon another, and that they do not relate to claims of the government against its own citizens resident in rebellious States. This may be conceded, but the same reasons which justify the application of the rule to one class of cases require its application to the other. True, the *right* of a citizen to sue during the continuance of the war was suspended, while the *right* of the government remained unimpaired. But it is the loss of the ability to sue rather than the loss of the right that stops the running of the statute. The inability may arise from a suspension of right, or from the closing of the courts, but whatever the original cause, the proximate and operative reason is that the claimant is deprived of the power to institute his suit. Statutes of limitations are indeed statutes of repose. They are enacted upon

the presumption that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue. Such reasonable time is therefore defined and allowed. But the basis of the presumption is gone whenever the ability to resort to the courts has been taken away. In such a case the creditor has not the time within which to bring his suit that the statute contemplated he should have." (p. 513.)

This court has been reluctant to acknowledge exceptions additional to those contained in the statute itself. Its general policy is illustrated by the decision in the case of *Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051, where it was held that fraudulent concealment of the fact that a right of action existed did not create an implied exception to the statute. On the other hand, in the case of *Duvall v. Simpson*, 53 Kan. 291, 36 Pac. 330, which was instituted originally to correct a mistake made in describing the land intended to be conveyed by a deed, the word "mistake" was practically read into the statute providing that the period of limitation for relief on the ground of fraud does not commence to run until discovery of the fraud. This decision was followed in the case of *Coal Co. v. Miller*, 88 Kan. 763, 129 Pac. 1170, decided in February, 1913. In the case of *The State v. Bank*, 84 Kan. 366, 114 Pac. 381, it was said:

"When the court assumed full charge of all the affairs of the Circleville bank and undertook to wind them up for the benefit of creditors, stockholders and all others concerned, the right to secure the payment of claims by the usual processes of the law was suspended. The receivership suit itself was one pending for the benefit of everybody interested. The statute of limitations against ordinary actions has no application, and lapse of time before proceeding against funds in the receiver's hands is important only as it tends to show laches or unreasonable delay." (p. 370.)

In the case of *Hawkins v. Brown*, 78 Kan. 284, 97 Pac. 479, Hawkins pleaded the statute of limitations in an action to recover on a promissory note which he

had executed.  The plaintiff showed that the note had been in *custodia legis* for a time sufficient to remove the bar of the statute, in a controversy to which Hawkins was not a party.  The court said:

"The proceedings in the district court of Haskell county did not affect the rights of defendant Hawkins, for he was a stranger thereto.  It can not be that the inconvenience or the practical difficulty of bringing an action upon a promissory note, because it is involved for the time in litigation in an action between other parties, can suspend the operation of the statute of limitations on such instrument against a person who is in no way responsible for, involved in, or connected with, the litigation.  So to hold would be to read into the statute a proviso or condition not placed there by the lawmakers."  (p. 288.)

However, in the case of *Harrison v. Scott,* 77 Kan. 637, 95 Pac. 1045, the court recognized the rule that the pendency of legal proceedings may affect the running of the statute, and quoted the statement of the rule found in 25 Cyc. 1278, as follows:

" 'Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right.' "  (p. 641.)

In the case of *Dendy v. Russell,* 84 Kan. 377, 114 Pac. 239, the syllabus reads as follows:

"The appellants sued on the covenants of warranty of title in a bill of sale.  In a former suit on the same cause of action it was adjudged that they could not maintain an action at that time because of an oral agreement not to sue until other litigation terminated. *Held:* (1) That while they were prevented from maintaining the action the statute of limitations was tolled."

Sometimes it is said that the rule excluding from computation the time during which a creditor is prevented by paramount authority from exercising his remedy applies only when the paramount authority was invoked and the restraint was induced by the debtor.  This

statement of the rule (*Lagerman v. Caserly*, 107 Minn. 491, 120 N. W. 1086, 23 L. R. A., n. s., 673), is too broad since the paramount authority might, under some circumstances, be the state itself acting in its sovereign capacity.

In the present instance the suit was brought by a third party, who attacked the title of the mortgagor and the legal existence of the mortgage before a right of action accrued to the mortgagee. Both the mortgagor and the mortgagee were made parties to the suit and upon the situation thus created the law itself, out of considerations of justice, orderly procedure, and finality of results, interfered and precluded the mortgagee from pursuing his remedy against the mortgagor. It would seem that the law ought not to say to the mortgagee that he must proceed or lose his remedy while at the same time forbidding him to proceed.

Under the circumstances it is held that the operation of the statute of limitations was postponed until after the claims of the city of Hutchinson were disposed of. Foreclosure having been asked in due time thereafter, the remedy was not barred.

The judgment of the district court is reversed and the cause is remanded with direction to foreclose the mortgage.