**McDONALD v. AYRES.   (No. 8539.)**

(Court of Civil Appeals of Texas.   Galveston.
Feb. 5, 1925.   Rehearing Denied
March 5, 1925.)

1. **Limitation of actions** ⟜102(4)—**Rule that limitation will not run in favor of trustee until repudiation of trust, applies only to express or direct trust.**

The rule that statute of limitations will not run in favor of trustee until his repudiation of trust applies only to an express or direct trust.

2. **Limitation of actions** ⟜151(1)—**Defendant's written acknowledgment of plaintiff's part ownership of note held to prevent limitation running against plaintiff's suit on such note until date note collected.**

Where in former action between plaintiff and defendant, defendant's answer was a written acknowledgment that plaintiff was part owner of a note, and defendant failed to establish his claim to apply plaintiff's interest in note to indebtedness due defendant by plaintiff, statute of limitations would not bar plaintiff's suit thereon until four years after date note was collected.

3. **Limitation of actions** ⟜106—**Plaintiff claiming interest in note held not required to sue therefor during pendency of appeal by defendant from judgment in accounting fixing plaintiff's share.**

Where judgment was entered in former action for accounting, fixing plaintiff's interest in note held by defendant, from which defendant appealed, during pendency of such appeal plaintiff was not required to sue for his share to prevent running of statute of limitations.

4. **Judgment** ⟜720—**Defendant held estopped from denying validity of order on him for money, where its validity adjudged in a prior suit.**

Where in former action for accounting between same parties, certain orders for money were adjudged valid obligations of plaintiff, and allowed as credits to defendant, and thereafter plaintiff purchased them from holders, defendant is estopped in later suit on such order from denying their validity.

5. **Interest** ⟜19(1) — **Defendant withholding money owing to plaintiff held not entitled to interest on claim against plaintiff.**

Where cross-debts between plaintiff and defendant had been adjudicated in a prior suit, and thereafter defendant collected note belonging in part to plaintiff and withheld proceeds, which were in excess of plaintiff's indebtedness to him, he was properly denied interest on his claim against plaintiff after the date of collecting note.

On Motion for Rehearing.

6. **Limitation of actions** ⟜148(1) — **Acknowledgment of debt to suspend limitations must be for benefit of party to whom debt due.**

For an acknowledgment of a debt to be sufficient to suspend statute of limitations, it must be made for benefit of party to whom debt is due.

7. **Limitation of actions** ⟜105(1)—**Limitation held not to run against payee of money orders, where drawee denied funds with which to pay until determination that latter's obligation to pay had matured.**

Where by terms of defendant's acceptance, money order drawn by plaintiff and payable to R. were not payable until drawee had funds belonging to drawer in excess of latter's indebtedness to him, and his denial that he had funds with which to pay continued throughout suit against him for accounting, statute of limitation did not run against R. until it was finally determined that defendant's obligation had matured.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by J. K. Ayres against R. D. McDonald.   Judgment for plaintiff, and defendant appeals.   Affirmed.

See, also, 242 S. W. 192.

L. B. Moody, of Houston, for appellant.
Woods, King & John, of Houston, for appellee.

PLEASANTS, C. J.   The nature of this suit can be best understood from a brief statement of the facts upon which it is based. In a suit for an accounting between the parties to this suit, a decree was entered by the district court of Harris county on March 31, 1917, by which it was adjudged and decreed that appellee herein was indebted to appellant in the sum of $2,534.82, and that appellee was the owner of a one-half interest in a note for $11,861.24, executed by the Keystone Mills Company in favor of appellant and held by him for the joint account of himself and appellee.   In the accounting, by which the balance of $2,534.82 in favor of appellant was found by the judgment, appellant was allowed, among other credits claimed by him on an indebtedness of $7,353.17 against him by appellee, the following items:

"Defendant was by said judgment allowed as a credit the sum of $751.77 as of date May 22, 1913, by reason of an order drawn by plaintiff on defendant, in favor of J. P. Ross, and a further credit by reason of a draft for $801 drawn by plaintiff on defendant March 7, 1914, in favor of J. P. Ross, and another credit by reason of an order drawn by plaintiff on defendant in favor of John B. Peyton in the sum of $925.41 May 29, 1913, on which order defendant was allowed as a credit the additional sum of $49.35 interest, making a total credit of $974.76, and defendant was further allowed as a credit $575 by reason of an order drawn by plaintiff on defendant March 8, 1914, in favor of Peyton & Pegado, the total sum and amount of such credit being $3,102.53."

The other credits allowed appellant by this judgment as before indicated wiped out his indebtedness to appellee and left the latter indebted to him in the sum of $2,534.82 as above stated, but having a one-half interest

in the Keystone Mills Company note above mentioned.

This suit was brought to recover one-half of the amount collected by appellant on the note just mentioned, and also the amount due on the several drafts and orders above mentioned which had been allowed appellant as credit in the judgment before mentioned, but which had not been paid him, and had by the holders thereof been sold and transferred to appellee. In addition to a general demurrer and general denial, defendant specially pleaded the statutes of two and four years' limitation against plaintiff's suit to recover upon the drafts and orders above described and against his suit to recover one-half of the note collected by appellant. He further specially pleaded that the plaintiff was not entitled to recover upon the Ross order for $751.77, because the same was included in and was superseded and canceled by the subsequent order for $801.90 before mentioned. The cause was tried with a jury in the court below. After hearing the evidence the trial judge instructed the jury to return the following verdict:

"Gentlemen of the Jury: In this cause you are instructed to return a verdict in favor of plaintiff and against defendant for the sum of $6,616.32, with interest thereon from date at the rate of 6 per cent. per annum, and in favor of plaintiff against defendant for the further sum of $1,657.19, with interest thereon from date at the rate of 8 per cent. per annum."

Upon the return of the verdict judgment was rendered in accordance therewith. Under appropriate assignments and propositions appellant complains of this judgment upon the following grounds: First, because the undisputed evidence shows that appellant collected the Keystone Mills Company note more than two years before this suit was filed, and therefore appellee's suit to recover one-half of the amount of such collection was barred by the statute of limitation of two years, pleaded by appellant; second, because the order for $751.77 given by appellee in favor of J. P. Ross was accepted by appellant on May 22, 1913, which was more than four years before this suit was filed, and appellee's suit against appellant on said order was barred by the statute of limitation of four years pleaded by appellant; third, because, it being shown by the undisputed evidence that this order for $751.77 was included in and superseded by a subsequent order given J. P. Ross by appellee for $801.90, appellee was not entitled to recover upon the order for $751.77, which was canceled and became of no further force and effect by the issuance of the order for $801.90; fourth, because the trial court only allowed appellant a recovery of interest up to July 29, 1917, on a judgment for $2,538.82 against appellee, owned by appellant and pleaded as set-off against appellee's claims.

We will consider and dispose of these objections to the judgment in the order in which they are presented.

Upon the issues of limitation the record discloses the following facts: This suit was filed on January 12, 1920. Appellant collected the Keystone Mills Company note, amounting, principal and interest, to the sum of $13,583.09, on July 27, 1917. The date on which appellee learned of the collection of this note is not definitely shown by the evidence. He testified:

"The first time that I knew that McDonald had collected the Keystone Mills note for $11,861.24 was several months after it was collected. It was after the case was tried in the district court, and it is my recollection that it was after the Supreme Court had refused writ of error that I found out he had collected it, but I am not sure."

There is no evidence that he made any inquiry or took any steps to find out whether the appellant had collected the note until the Supreme Court had refused a writ of error in the original suit on March 17, 1919, but there is no evidence to show that he knew that the note had been collected prior to that date. The order for $751.77, given by appellee to J. P. Ross, was accepted by appellant on May 22, 1917. This order was given by appellee and accepted by appellant to be paid out of money which might come into appellant's possession for the account of appellee over and above the amount of appellee's indebtedness to appellant. (The order was not paid by appellant, and was sold and transferred by Ross to appellee prior to the institution of this suit.

On the original suit for accounting between appellee and appellant, before referred to, appellant's answer contains the following averments in reference to the Keystone Mills Company note, the proceeds of which are involved in this suit:

"The remaining note was executed by Keystone Mills Company for the balance of the purchase price of the lands in which plaintiff and defendant were interested, and also to cover unpaid purchase money of other lands belonging to defendant individually and in which plaintiff never had any interest, and which was sold by defendant to Keystone Mills Company at the same time as the sale to them of the lands in which plaintiff has an interest. Said note is still unpaid and has been deposited in the registry of this court subject to its further orders."

The judgment in the original suit establishing appellee's interest in the note is as follows:

"It further appearing to the court that as a part of the consideration paid by the Keystone Mills Company to the defendant for the lands conveyed to it by him, on January 29, 1913, said Keystone Mills Company executed and delivered to the defendant its note in the sum of $11,861.24, due and payable ——— years after its date,

with interest at the rate of 8 per cent. per annum, payable semiannually, which said note is secured by a vendor's lien upon said land retained in said deed, and upon which said note the interest has been paid and credited up to January 29, 1915, and it appearing to the court that the plaintiff is the owner of and entitled to a half interest in and to said note and the amount due thereon: It is therefore so ordered, adjudged, and decreed that the plaintiff, J. K. Ayres, is the owner of an undivided one-half interest in and to said note, which though heretofore impounded and placed in the registry of this court, under an interlocutory order, has heretofore, under another interlocutory order, been delivered back to the defendant by the clerk of this court."

There is no testimony that appellant ever repudiated or denied appellee's part ownership of the note. He claimed in the original suit a much larger indebtedness against appellant than was adjudged him, and excepted to the judgment and appealed the case. After the affirmance of the judgment by the Court of Civil Appeals (207 S. W. 686) he applied to the Supreme Court for a writ of error. This application was refused by the Supreme Court on March 17, 1919.

[1] It is well settled, as stated in appellant's brief, that the rule that the statute of limitation will not run in favor of a trustee until his repudiation of the trust applies only to an express or direct trust. Kennedy v. Baker, 59 Tex. 153. In the case of Wingate v. Wingate, 11 Tex. 430, the extent of the application of the rule is thus stated:

"But it does not follow, that every kind of trust forms an exception to the operation of the statute of limitations; if so, half the business transactions of men would be removed from its influence. And the doctrine has been settled, by a train of decisions, from the case of Lockey v. Lockey, Prec. in Ch. 518, decided by Lord Macclesfield, down to the present time, that to remove a trust from the operation of the statute, it must be such a trust, technically, as is created by the mutual confidence of the parties, such as equity alone can take cognizance of and afford redress. If it is a trust that common law courts could give relief, the statute will run, although the party may have sought his remedy by a suit in chancery. In such cases, the fact of the suit being brought in the Court of Chancery, will not defeat the statute; it can be avoided only by a technical trust, of which the courts of common law could afford no relief. When it is laid down that so long as a trust is continuing and subsisting, the statute does not commence to run between the cestui que trust or his assigns and their trustee, the doctrine applies to such cases only as are strictly and technically trusts, created and sustained by the principles of equitable jurisprudence, exclusive of, and in contradistinction to, trusts of common law cognizance; and even in such cases the statute would commence to run from the time the trustee disavowed the trust, or did any act conclusively showing that he did not hold as trustee."

If the record in this case only showed that appellant had collected money belonging to,

and which it was his legal duty to pay over to, appellee, his trusteeship would be implied or constructive and would not affect the running of the statute of limitation. 25 Cyc. 1107, 1108, 1160; 17 Ruling Case Law, 784.

[2] We also agree with appellant that the judgment in the original suit awarding appellee a one-half interest in the note did not change the character of the trust relationship between the parties. But this judgment and the answer of appellant in the original suit, both of which are pleaded by appellee in reply to appellant's plea of limitation, materially affect the question of limitation. Appellant's answer in the original suit, before set out, was an acknowledgment in writing that appellee was part owner of the note, and unless appellee's interest therein could be appropriated by appellant to the payment of the indebtedness against appellee claimed by appellant, the proceeds of the note when collected would partly belong to appellee. Conceding that this acknowledgment did not create an express trust between the parties, it was an obligation in writing on the part of appellant to pay appellee his interest in the proceeds of the note when collected unless he could establish his claim to appropriate such interest to indebtedness due him by appellee. He failed to establish the indebtedness claimed by him and became liable under the averments of his answer for the interest in the note awarded appellee by the judgment before set out. This liability having been acknowledged by him in writing signed by his attorney, limitation would not bar appellee's suit thereon until four years after its accrual which was on the date the note was collected, and this was less than four years prior to the filing of this suit.

[3] We are further of the opinion that the pendency of appellant's appeal operated to relieve appellee of the necessity of filing suit for his half of the money collected by appellant on the note to prevent the running of the statute of limitation, even if he had actually known of the collection prior to the termination of the appeal. If he had brought a suit before the final termination of that appeal by the refusal of the writ of error, his right to recover any interest in the note could not have been determined or enforced so long as appellant's appeal from the judgment fixing appellee's interest in the note was pending. We think this is the effect of the holding of our Supreme Court on a former appeal of this case. 242 S. W. 196. In disposing, on that appeal, of the question of whether a judgment became dormant pending an appeal therefrom, when no supersedeas bond was executed by the appellant, the court in the case cited, says:

"If he preferred to wait until the appeal was settled in order to fully determine his rights, he ought not be penalized by having an appeal de-

termine his rights in advance by barring his judgment before the appellate court could act on his appeal."

The same principle and rule is announced and applied in the cases of Cavitt v. Amsler (Tex. Civ. App.) 242 S. W. 246, and Semple v. Eubanks, 13 Tex. Civ. App. 418, 35 S. W. 509. In the Cavitt Case it is said:

"Where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right. 25 Cyc. 1278; Fields v. Austin (Tex. Civ. App.) 30 S. W. 386; Pease v. Southerlin (Tex. Civ. App.) 228 S. W. 269; Hutchinson v. Hutchinson, 92 Kan. 518, 141 P. 589, 52 L. R. A. (N. S.) 1165; 25 Cyc. 1173."

Any suit by appellee to recover his interest in the proceeds of the note pending the appeal by appellant from the judgment fixing such interest would have been vain and useless, and the law required no such proceeding on the part of appellee to protect his rights.

We think appellant's contention that appellee's suit on the Ross order for $751.77 was barred by the four years' statute of limitation is also untenable for the reasons above given for holding against his plea of limitation against the suit for one-half of the proceeds of the note collected by appellant. Appellant's answer in the original suit contains the following:

"Fifteenth. Defendant further shows to the court that on May 22, 1913, a draft or order on defendant was given by plaintiff to Capt. J. P. Ross for $751.77, to be paid out of any money which might come into defendant's possession over and above the amount owing by plaintiff to defendant, which draft was on said date accepted in writing by defendant, and although said draft has not been paid it constitutes an equitable assignment pro tanto of any sums of money which might be owing by defendant to plaintiff, and defendant is liable therefor to said Ross, and said Ross has filed suit against defendant on said accepted draft, which suit is now pending in the county court of Harris county, Texas."

By answer, which was pleaded by appellee in this case, appellant acknowledged and renewed his obligation to pay this order out of any money in his hands belonging to appellee •in excess of appellee's indebtedness to him. Under this acknowledgment appellant's obligation did not mature until the note was collected by appellant, which was less than four years from the date on which this suit was filed.

· [4] There is no merit in the contention that appellee was not entitled to recover on this order because the undisputed evidence shows that it was included in and superseded by the draft for $801.90 subsequently given Ross by appellee. In the former suit

between appellee and appellant it was adjudged that both of these orders were valid obligations of appellee, and appellant claimed and was adjudged a credit for them on his indebtedness to appellee. This adjudication is conclusive against the parties to that suit, and both are estopped to raise in this suit an issue as to the validity of either order. Hanrick v. Gurley, 93 Tex. 478. If this was not the law, appellant is in no position to complain of the judgment on the ground stated. He has not paid the $801.90 draft, and no judgment was rendered against him in the court below on appellee's claim for that amount, and if the debt evidenced by the two orders is one and the same, it could make no difference to him upon which of the orders appellant's recovery is based.

[5] We do not think appellant's complaint in failing to allow him interest on the indebtedness due him by appellee after his collection of the Keystone Mills Company note is well founded. It is true that the civil-law rule of compensation does not prevail in our jurisprudence. Under this rule, whenever there were cross-debts, as soon as a creditor became indebted to his debtor, without any action by either party, by operation of law a balance was struck between the parties and this balance determined which of the parties was thereafter the debtor. This rule is unknown in common-law jurisprudence except in running accounts between merchant and merchant. Campbell v. Park, 11 Tex. Civ. App. 455, 33 S. W. 754. But the civil-law rule of compensation was not the rule applied by the court below in refusing appellant interest on the indebtedness due him by appellee after he collected money belonging to appellant in excess of such indebtedness. The cross-debts between the parties had been adjudicated in a suit brought for that purpose, and when appellant collected the money belonging to appellee, he not only had the right but it was his duty either to apply it to the payment of his judgment against appellee or pay it over to appellee. He could not withhold appellee's money from him on which appellee could only recover interest at 6 per cent. and force appellee to pay interest at 10 per cent. on his indebtedness to appellant. We do not think there is any rule of law or principle of equity which would allow appellant to recover this interest.

Appellee by cross-assignment complains of the judgment refusing him recovery on the other claims set up in his petition. It is unnecessary to discuss this assignment in detail. It is sufficient to say that it has been duly considered and in our opinion should not be sustained.

We are of opinion that the judgment of the trial court should be affirmed; and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

[6, 7] The holding in our original opinion that appellant's answer in the original suit, referred to in our opinion, pleading as a set-off to appellee's demands its liability for the payment of the order for $751.77, given by appellee in favor of J. P. Ross, was a sufficient acknowledgment of his debt to Ross to suspend the running of the statute of limitation against Ross, is unsound and cannot sustain our holding that appellee's suit upon said order was not barred when this suit was filed. It is well settled by our decisions that an acknowledgment of a debt to be sufficient to suspend the statute of limitation must be made to or for the benefit of the party to whom the debt is due. City of Houston v. Jankowiskie, 76 Tex. 370, 13 S. W. 269, 18 Am. St. Rep. 57; Holland v. Shannon (Tex. Civ. App.) 84 S. W. 854. We are, however, still of the opinion plaintiff's suit on this order was not barred. By the terms of appellant's acceptance of the order it was not payable until appellant had funds in his hands belonging to appellee, in excess of appellee's indebtedness to him, sufficient to pay the order. The record shows that appellant had at all times denied that he had such funds with which to pay the order. It is true that in the original suit it was adjudged that appellee had such funds January 29, 1914, but appellant appealed from that judgment, and it did not become final until the refusal of a writ of error by our Supreme Court. Ross had no means of ascertaining when funds of appellee came into the hands of appellant. He was not a party to the original suit, and it is not shown that he knew of any facts which would justify him in concluding that appellant's liability on the order had matured. Under these circumstances, we do not think he was required to bring suit thereon until it was finally determined that appellant's obligation had matured.

We think the following proposition from appellee's brief is a sufficient answer to appellant's plea of limitation against the order:

"When one promises to pay money to a third party out of 'any sums of money which might be owing' by such one to another, and actively denies that any fund has come into existence from which the payment has been promised, carrying such denial through a complicated and prolonged litigation, all the while asserting his willingness to make payment whenever it should be determined that there existed funds out of which payment should be made; the third party is justified in awaiting the determination of the existence of the fund before demanding payment, and limitation should not begin to run against his action therefor until by the judgment he is informed of the existence of his cause of action which had theretofore been, in effect, concealed from him by the affirmative action of his contingent debtor."

After giving the motion for rehearing due consideration, we feel constrained to adhere to our former conclusions upon the questions presented by this appeal, and overrule the motion.