# LULA McSPADDEN, et al. v. MRS. ELIZABETH PARKENSON, et al.

Eastern Section. February 11, 1928.

Petition for Certiorai denied by Supreme Court, July 6, 1928.

C. C. Moore, M. L. Mulkey and McClure & McClure, of Chattanooga, for appellant.

Joe V. Williams, J. C. Nipper and S. B. Smith, of Chattanooga, for appellee.

THOMPSON, J.   The original bill in this cause was filed by Lula McSpadden and her brother, H. A. McSpadden, the latter also filing it in his capacity as executor of the last will of Mrs. Mary J. Nichols, deceased, against Mrs. Elizabeth Parkenson and the other heirs at law of J. N. Nichols, deceased husband of Mrs. Mary J. Nichols, deceased, for the purpose of reforming a deed which one, Charlie Knauff, executed to J. N. Nichols on April 6, 1912, so as to make said deed conform with the intention and purpose of the parties that the land be conveyed to J. N. Nichols and wife, Mary J. Nichols, as tenants by the entireties, and to remove the claim of the defendants as a cloud upon the title of the said complainants who were the sole devisees under the will of Mary J. Nichols who outlived her husband, J. N. Nichols.

The defendants, who as stated were the heirs at law of J. N. Nichols, deceased, filed an answer denying that it was the intention of the parties that the land be conveyed to J. N. Nichols and wife, Mary J. Nichols, and that the deed had been by mistake drawn to J. N. Nichols alone, etc.   Said answer alleged that defendants, as the heirs at law of J. N. Nichols, deceased, had inherited said land and were its owners.   It was filed as a cross-bill which prayed for a sale of the land for partition among said heirs.

The original complainants answered this cross-bill and in effect joined issue on it.

The Chancellor sustained the complainants' bill, and decreed that the deed from Charlie Knauff to J. N. Nichols, dated April 6, 1912, was by mutual mistake made to J. N. Nichols alone, instead of to J. N. Nichols and wife, Mary J. Nichols, and that said deed as recorded in the Register's Office, etc., be reformed so as to conform with the intention of the parties and so as to make it read from Charlie Knauff to J. N. Nichols and wife, Mary J. Nichols.   The cross-bill was dismissed.

The defendants appealed to this court but at a former opinion day we affirmed the decree of the Chancellor because we were satisfied that it was the intention of the parties that the deed be drawn to J. N. Nichols and wife, Mary J. Nichols, and that this intention was not carried out on account of the mistake of the draftsman of the deed.

The defendants have filed a petition to rehear in which they insist that the complainants' suit was barred by the seven years' limitation contained in Shannon's Code, sections 4014 and 4483, which provide as follows:

"4014. Saving as to persons under disability, but not more than seven years. Infants, persons of unsound mind, and married women may bring their several actions within one year after the removal of their respective disabilities, notwithstanding the lapse of said periods of two and three years; so that such suit be brought within seven years after the death of the debtor, if the cause of action accrued in his lifetime, or otherwise within seven years from the time the cause of action accrued."

"4483. Seven years' bar in favor of decedents' estates. But all actions against personal representatives of a decedent, for demands against such decedent, shall be brought within seven years after his death, notwithstanding any disability existing; otherwise they will be "forever barred."

Since it has been held in a number of cases cited in the foot-notes to these sections that the seven years' limitation therein contained need not be specifically relied on or formally pleaded if the facts appear in the general pleadings and the proof, and since it has also been held that the heirs, as well as the administrator, are entitled to its protection, we think defendants are entitled now to rely on it in their petition to rehear.

It was alleged in the original bill and shown in the proof that the deed sought to be reformed was executed on April 6, 1912. It was recorded in the Register's Office on April 30, 1912. It was alleged in the bill that J. N. Nichols died in the spring of 1916, and it was shown in the proof that he died during the year 1916. It was alleged in the bill that Mary J. Nichols died in 1924, and that her will devising the land to the complainants was probated in May, 1924. The proof shows that she died during the early part of May, 1924, and that her will was probated prior to May 27, 1924. The original bill in this cause was filed by the complainants on May 27, 1924.

So it appears that more than seven years elapsed between the death of J. N. Nichols and the death of Mary J. Nichols, and the bill was of course not filed until a week or two after the death of Mary J. Nichols. So, the question arises whether the seven years' limitation contained in the two above quoted code sections applies to the cause of action involved in this suit.

The land involved was a forty-five-acre tract which adjoined a five-acre tract which was owned by J. N. Nichols and Mary J. Nichols as tenants by the entireties and upon which was situated their three-room dwelling house. These two tracts were all the land that either of them owned, and during his lifetime they lived in said dwelling

house and made their living by cultivating this land. After his death no dower or homestead was ever assigned to her. She lived until her death in the dwelling house and had absolute and exclusive possession of the forty-five-acre tract. She maintained a fence around it, treated it as her own and made numerous statements that it was hers. Some of the years she cultivated it, and some of them she rented it to others who cultivated it and paid her rent; sometimes in money and sometimes in crops. In fact, one of the years she rented it to a son of one of the defendants who was a sister of her deceased husband. During this time none of the defendants made any effort to oust her from the land, although at least some of them knew that she was in full possession of it and was claiming it as her own.

At the time of her death one of the complainants was living with her, and immediately upon her death the complainants took possession of the land and were still in full possession of it at the time they instituted this suit, although some of the defendants began making claims to the land immediately after her death. Prior to her death and on June 7, 1923, she had executed a will devising the land to complainants, and this will was probated prior to the institution of this suit.

After the deed in question had been recorded it was put away in a dresser drawer where it remained until after the death of Mary J. Nichols. Both J. N. Nichols and Mary J. Nichols were ignorant and illiterate people and believing the deed to have been drawn as they desired, it was natural for them to simply put it away without attempting to read it and to let it lie there for years without ever examining it again. We think the record makes it clear that neither of them (particularly Mary J. Nichols) ever knew that the deed had been drawn to J. N. Nichols alone. And the original bill in this cause was filed within a week or two after the death of Mary J. Nichols, which was the first time either of the complainants ever saw the deed.

Defendants insist upon the authority of Love v. Welch, 4 Pickle, 260, and Henderson v. Tipton, 4 Pickle, 254, that the seven years' limitations contained in the two Code sections applies to and bars the complainants' cause of action. Complainants insist upon the authority of Anderson v. Akard, 15 Lea, 182, that it does not apply to their cause of action.

In Henderson v. Tipton, two brothers had a contract under which both of them were to own all land that either of them should acquire. After the execution of this contract one of them, Thomas Love, acquired three tracts of land, and more than seven years after his death the devisees of the other, Robert Love, who outlived Thomas Love, instituted suit to recover from the devisees of Thomas Love one-half of said three tracts. They were, therefore, attempting to set up a trust in the land.

The Supreme Court after reviewing the decisions, and in holding that the limitation barred the suit, said in part as follows:

"These authorities seem to us to establish that a complainant, seeking to recover from the heirs or real representatives of a deceased person an interest in land descended to them from their said ancestor, upon a contract of the latter, is a creditor of the deceased in the sense of this Act, his demand a claim which he must make within seven years, otherwise his remedy is barred in favor of the heirs.

"It is true these authorities give to the word "creditor" as contained in the Act, a somewhat liberal construction, yet they probably follow the spirit of the Act, which is, that all demands or claims for relief against the personal representative or heirs of a dead man, upon any contract of, or equity against him, must be made within seven years from his death. At any rate, we think that there is no mistaking the conclusion that such is the purport of these decisions.

"In the present case the title to the lands was acquired by Thomas Love by deeds containing no trust upon their face; upon his death it passed to his devisees. It is claimed the latter hold the title to the extent of one-half, in trust for the complainants, by virtue of the contract of Thomas Love of 1819, and that this statute does not operate against an express trust. This contract was a personal obligation of the parties, not contracting for an equity in any particular lands, but an agreement for a partnership in general speculations, in which these lands were afterwards acquired, the parties binding themselves in a penalty of $10,000 for its performance.

"In the cases before referred to, where the ancestor had sold and by bond bound himself to convey particular land to the vendee, the heirs were protected by this statute, although there are authorities holding that after a sale and bond to convey, the vendor holds the legal title in trust for the vendee, and that it so descends to the heirs."

In Henderson v. Tipton, land of a deceased, or the proceeds of a sale thereof which had been made by the executor, was sought to be recovered, the suit being filed more than seven years after the death of the deceased. The theory of the bill was that while the deceased held the legal title, it was in trust for himself and the complainants, and this complainants showed by written agreement executed before the lands were purchased by the deceased. The lands were wild lands, and the executor had asserted the claim of the estate, and had paid taxes. But complainants had likewise asserted claim to the land and had paid some taxes, and they introduced proof tending to show that the executor knew of their assertion of claim and did not dispute their rights, if in fact he did not admit them. The Supreme Court said:

"But we hold, as stated, it is immaterial whether he (the executor) did or not recognize complainants' claim. It would not affect the rights of the heirs under the statute we are now considering.

"A request for delay and recognition of a personal demand by an executor does not stop the running of this statute. (Cases cited.)

"Still less could the heirs be deprived of this defense by the conduct of an executor and his recognition of claim against the land. This statute . . . is one of positive prescription, and not only bars the remedy but extinguishes the right; runs against everybody, including the State, and need not be pleaded, but may be relied on in evidence.

"The only question here is whether the statute applies to a claim or demand like the present. In terms the statute refers to creditors, and appears to contemplate suits against the personal representatives. But in numerous cases a construction has been given to the statute showing its application to other demands than mere personal claims, and to other persons than representatives. It has been uniformly held to protect the heirs of a decedent or devisees of a testator. These cases are all referred to in notes to the sections cited, and need not be restated here.

"Finally, the exact case now presented, on facts almost identical, came before the Court at Jackson in 1875 (in Love v. Welch) and it was there held, in an elaborate opinion by Judge McFarland, in which several of the leading cases were reviewed, that the statute applied to a suit against heirs to recover real estate; that such a claimant was within the meaning of the term 'creditor' there used, and such a claim was a 'demand' within the meaning and purpose of the statute; that the object and purpose of the statute was to make all claims for money, personalty, or realty, on which the deceased could have been sued in his lifetime suable for seven years after his death against anyone representing him in the title, and after that time be extinguished, whatever might be the nature or character of the demand which might have been asserted in his lifetime. We adhere to that ruling," etc.

In Anderson v. Akard, relied upon by complainants, William Peoples conveyed to Absalom McNabb a tract of land and delivered the deed to him, but the deed was lost and was never recorded. McNabb went into possession of the land and he, his widow and successor in title still held possession at the time the bill was filed against the heirs of Peoples more than seven years after his death. The bill was filed to set up the lost deed and to perpetually enjoin the heirs of Peoples from prosecuting a suit for the recovery of the land. The heirs of Peoples relied upon the seven years' limitation, and the Court said:

"The statute relied on is that which limits the right of action against heirs for a debt, contract or liability of the ancestor to seven years from his death. . . . The argument is that the right of action accrued at the time when the deed was lost, and that the loss occurred in the lifetime of William Peoples. The weight of testimony is, perhaps, in favor of this contention of fact, but there is evidence tending to show that the loss occurred after the ancestor's death. Be this as it may, the suit is not for the recovery of land, or the enforcement of a debt, contract or liability of the ancestor. It is simply the assertion of an equitable remedy which the party is entitled to resort to at any time when the exigency may arise. The proof leaves no doubt that the complainant, and those under whom he claims, have been using the land in the only mode in which, in its condition, it could be used, without any adverse user. The proof of the heirs does not establish any use of the timber on the land openly adverse to the claims of the McNabbs. And if it did, the possession of the McNabbs would sustain their right, if they had the legal title. Their right to set up their lost deed is one of those continuing equities, they being in legal possession, and holding against any adverse claim, of which we have several cases in our books, where the statutes of limitations have no application. 'Neither the statute of limitations,' this court has said 'nor lapse of time' have any application to a bill in chancery, in which the complainant is not seeking to recover anything, but only resisting the demand of·the defendants which they have been constantly opposing."

It seems to us that Anderson v. Akard does not sustain complainants' insistence that the seven year statute is not applicable to their cause of action. In that case, like the case at bar, the complainant had possession, but he also, as between him and the defendants, had the legal title to the land, because the lost deed had been delivered to McNabb and passed the title. Shannon's Code 3671, and footnotes thereto. Having the legal title as between him and the defendants, and also having possession, the complainant was simply asserting an equitable remedy of setting up a lost deed, and was protecting himself by injunction from suits against him to recover the land. He was therefore not trying to recover anything from the defendants.

But in the cause at bar, neither the complainants nor Mary J. Nichols ever had title to the land involved. If they can reform the deed they can thereby acquire title, and they are therefore in this suit in effect attempting to recover the title to the land. It seems to us, therefore, that the cause at bar is governed by the tests laid down in the decisions in Love v. Welch and Henderson v. Tipton, and that the seven years' limitation is applicable to it.

But it does not follow that the limitation bars the suit. In Jones v. Whitworth, 10 Pickle, 618, and other cases cited in the footnotes to the two code sections, it was held that the seven years' limitation contained in both of said sections does not begin to run until the cause of action sued upon accrues, and that this is true although said cause of action does not accrue until after the death of the ancestor.

In 37 C. J., page 950, section 322, under the heading of Limitations of Actions, in discussing the limitation of actions for reformation, etc., based upon mistake, it is said:

"The principle which governs the running of the statute of limitations in cases where equitable relief is sought on the ground of mistake is substantially the same as that applicable in cases of fraud hereinbefore discussed. The general rule, often substantially embodied in the local statutes, is that if plaintiff without any fault or neglect on his part is ignorant of the mistake, the statute begins to run when and only when the mistake is discovered, or from the time when plaintiff, by the exercise of reasonable diligence, might have discovered his error."

In sub-note "a," under note 33, on page 952 of the same book it is said:

"For the purpose of determining the time when limitation commences to run against an action to correct a mistake in a deed the record of the deed does not import notice of the mistake. Jackson-Walker Coal, etc., Co. v. Miller, 88 Kan., 763, 129 P., 1170. The record certainly gave no better notice of the mistake than the original instrument. American Min. Co. v. Basin, 39 Mont., 476, 104 P., 525; 24 L. R. A. (N. S.), 305."

In the cause at bar the mistake was made by the draftsman of the deed, a Mr. Andy Marshall, who drew it at the request and in the presence of Charlie Knauff and J. N. Nichols. Mary J. Nichols was not present. As stated, she was ignorant and illiterate and it was natural for her, both before and after his death, to let the deed remain in the dresser drawer without attempting to examine it. The record shows that J. N. Nichols often stated in his lifetime that he wanted her to have the land and did not want his relatives, who were collaterals, to inherit anything from him. She helped him cultivate the land (which was their only means of support) during his lifetime, and had no cause to doubt that the deed had been drawn so as to convey the land to both of them. That she thought she owned the land after his death is clear.

Upon all of the evidence we find that Mary J. Nichols never knew of the mistake and was guilty of no fault or neglect in failing to discover it. And of course these complainants knew nothing of the deed until after the death of Mary J. Nichols just a few weeks before the

institution of this suit. We are therefore of the opinion that the cause of action sued upon in this case did not accrue, and the limitation did not begin to run, until a few weeks before the institution of this suit, and therefore that the limitation relied upon by defendants has not barred the complainants' suit.

The petition of the defendants to rehear will be overruled at their cost.

All concur.