No. 31,692

J. E. REGIER et al., *Appellees*, v. AMERADA PETROLEUM CORPORATION et al., *Appellants*.

(30 P. 2d 136.)

Opinion filed March 10, 1934.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott,* all of Wichita, *J. Sidney Nye,* of Newton, *F. Dumont Smith, Eustace Smith* and *Claude Chalfant,* all of Hutchinson, for the appellants.

*Ezra Branine, Alden E. Branine* and *Fred Ice,* all of Newton, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to quiet the title to a small tract of land bought for a highway. It was brought by Alta township in Harvey county, as owner, and by J. E. Regier, as an oil and gas lessee, of a small strip of land 49½ feet wide by 778½ feet in length. The strip in question was a part of a quarter section of land purchased by Abraham P. Froese, in 1890, described as the northwest quarter (NW¼) of section twenty (20), township twenty-two (22) south, range three (3) west, Harvey county, and has been his home ever since that time. A small creek, known as Blaze Fork creek, entered the west boundary line from the northwest and meandered in a southeasterly direction for a short distance, and then back in a southwesterly direction for a short distance, where it again crossed the west boundary line of the quarter section. The public had left the section line along the creek and had traveled over onto the land owned by Mr. Froese. To lay the road along the section

line would necessarily have meant the building of two bridges, and to avoid the added expense the township determined it would be cheaper to buy the land from Mr. Froese, and therefore it bought from him a rectangular piece of ground along the northwest corner of the quarter section which was believed to be wide enough to enable the township to construct a highway on the east of and circling the creek. The purchase was made, and Mr. Froese and his wife thereupon executed and delivered to the township a warranty deed conveying the small tract on July 25, 1902, and it was recorded on February 2, 1903.

In the answer and cross petition filed by Abraham P. Froese he alleged there was a mutual mistake made in the description of the strip sold, in that the strip was to be two rods wide instead of three. That there was an agreement that if the road should ever be abandoned as a highway it should revert to him, and that the deed as written did not contain the reverter clause. He claimed that he did not learn of the omissions in the description and the failure to include the reverter clause until August 30, 1932, about the time this action was brought. That was about thirty years afterwards. He asked that the deed be reformed to correct the description, by making it contain the clause that it would revert to him and his assigns if the highway was ever abandoned. The court found that he executed and acknowledged the deed for a consideration of $25 on July 25, 1902, and conveyed to the township and its successors and assigns the fee-simple title to the strip out of the northwest quarter of his farm beginning at a fixed point, running east three rods to another fixed point, then south forty-seven rods to a point; thence west three rods to a point; then north forty-seven rods to the place of beginning, and that the deed was duly acknowledged before A. B. Bueler, a notary public.

After the notary had drawn the deed, including the description, in the presence of both grantor and his wife, the instrument was duly recorded on February 2, 1903. After finding the nature of the creek and the way in which it meandered, and the fact that vehicles were driving across the land, and that Froese had complained about it, the township concluded to purchase a right of way along the bank of the creek in order to avoid the expense of building two bridges if the section line was followed; that Froese negotiated with the officers of the township and agreed to sell to the township a strip three rods wide and forty-seven rods long, and the deed was accord-

ingly drawn, and that the deed conveyed exactly the land intended to be conveyed, both grantors and grantees assuming that a strip three rods wide was sufficient for the purposes intended.

The court found that Froese and his wife each had individual and actual knowledge of the description contained in the deed at the time it was delivered and acknowledged, and that Froese on two different mortgages, in 1911, had referred to the same description in other instruments, and that the township was now in full possession of the real estate described in the deed; that the reasonable value of the land at the time of the execution of the deed was about $25; and that for nearly thirty years thereafter it had no value for oil or gas purposes. On August 31, 1932, the township executed and delivered to J. E. Regier, one of the plaintiffs, an oil and gas mining lease, on which oil and gas had recently been discovered, and this discovery probably accounts for this litigation. The court found that Regier was the owner of an oil and gas lease upon the above described real estate, and was entitled to a decree quieting his title in and to the interest conveyed to him in the above described lease, holding that it was a valid and subsisting oil and gas mining lease. Judgment was accordingly entered.

The defendants complain of a finding of the court stating in effect that the preliminary negotiations for the sale of the strip of land were in order to avoid the expense of building two bridges on the section line, and that some of the parties negotiated for the purchase and stepped off what they thought would be necessary for the road but had misjudged the actual width necessary; that the township officers agreed to buy and Froese agreed to sell to the township a rectangular strip three rods wide and forty-seven rods long for $25. Negotiations were carried on in German, as Froese and his wife did not then speak English, and that the deed conveyed exactly the land intended to be conveyed, both grantors and grantees assuming that a strip three rods wide would be sufficient for the purpose. These men who conducted the negotiations were not engineers and did not know that the strip was not wide enough for the intended purpose until near the time of the trial. The travel on the road, it appears, extended farther out in Froese's land than some of the parties expected it would. There was evidence to support the questioned finding so far as it was material to the questions involved in the action. Froese testified that the quantity conveyed was only two rods wide, but there was abundant evidence to sustain the testimony

of the others that the strip was three rods wide, and the deed was so executed. After the strip was transferred Froese and his wife in two mortgages used the description exactly in the term employed in the deed which, as we have seen, showed that the strip was three rods wide. Under the testimony it cannot be held that the questioned findings are without support in the evidence.

In his cross petition defendant Froese insists that a mutual mistake was made in the execution of the instrument and asks that it be reformed on that ground. To justify a reformation of the deed the burden was, of course, on the party asking for it. A high order of proof is necessary to warrant a court in substituting other terms and conditions than those used in the written contract made by the parties. The proof must be full, strong and clear, and the facts shown beyond reasonable controversy. Froese's testimony alone, if accepted, without contradiction, tended to show he was mistaken in its terms, but he placed the ground of reformation on the ground of mutuality of a mistake, a fact not established. In the absence of fraud, where the ground is mutuality of mistake, mutuality is an essential and must be definitely shown. In *Algeo v. Employers' Indemnity Corporation,* 119 Kan. 186, 237 Pac. 879, it was said:

"To entitle a party to a reformation a high order of proof is necessary to establish that a mistake was made (*Kratz v. Padfield,* 111 Kan. 396, 207 Pac. 776), and further that it was the intention of both parties to make the agreement which the plaintiff alleges was really made." (p. 189.)

That case shows that it is not enough that one of the parties is satisfied that a mistake was made, but it must be shown that both parties intend that the instrument should show what both intended to cover. It must be something within the contemplation of the parties and agreed upon, but which was not written out. The testimony of Froese failed to convince the trial court that a mutual mistake had been made. There was evidence to the contrary, in fact a sharp conflict as to the supposed mistake, and the court was not satisfied that a mistake was made. There were circumstances or reasons that the intention claimed by Froese had not been established.

The plaintiffs contend that the action as pleaded for mutual mistake was barred by the statute of limitations, while defendants insist that it was not barred, as they did not discover the mistake until thirty years later, about the time of the trial. The question was brought sharply to the consideration of the court in *Railway*

*Co. v. Grain Co.,* 68 Kan. 585, 75 Pac. 1051, and although there was a dissent, it was held that under the statute of limitations—

"The enumeration by the legislature of specific exceptions to a statute of limitations by implication excludes all others," (Syl. ¶ 1.)

and therefore—

"The provision in subdivision 3 of section 18 of the civil code (Gen. Stat. 1901, sec. 4446), that a cause of action for relief on the ground of fraud shall not be deemed to have accrued until the discovery of the fraud, has no application to an action founded on contract," (Syl. ¶ 2.)

and did not operate to postpone the statute of limitations. Attention is called to the fact that the civil code provides that—

"Distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished, and in their place there shall be hereafter but one form of action, which shall be called a civil action." (R. S. 60-201.)

The legislature declared certain exceptions, but none of them include the one relied upon. It was held that the fraudulent concealment of the fact that a right of action for a breach of contract existed, does not change the nature of the action nor shift it into the class named in subdivision 3 of section 18 of the civil code. So far as actions founded upon contracts are concerned, the operation of the statute depends upon the nature of the cause of action and not upon the time that a plaintiff discovers that he has a right of action. The action accrues when the contract is violated and not at the time that the plaintiff learns that it has been violated. It was therefore held:

"In the absence of a statute making concealment an exception to the statute of limitations, the courts cannot create one, however harsh and inequitable the enforcement of the statute may be." (*Railway Co. v. Grain Co.,* 585, 591.)

It is said that there is a radical difference of judicial opinion upon the subject, but the court determined that the rule adopted should be the one enforced in Kansas. In *Baxter v. Krause,* 79 Kan. 851, 101 Pac. 467, *Railway Co. v. Grain Co.* is cited with approval on the theory that the courts will not ingraft a new exception upon a statute of limitations, exceptions by implication being not favored. The case is cited again in *Caspar v. Lewin,* 82 Kan. 604, 109 Pac. 657, wherein the case is referred to as follows:

"It is the law in this state that when the language of a statute is plain and unambiguous there is no room left for a judicial interpretation which will change the effect of the language employed. (*Ayers v. Comm'rs of Trego Co.,*

37 Kan. 240.) This principle has been applied in some striking instances. Thus, in *Railway Co. v. Grain Co.*, 68 Kan. 585, the court refused to read into the statute of limitations an exception to meet the fraudulent concealment of a breach of contract." (p. 627.)

In *Rucker v. Hagar et al.*, 117 Kan. 76, 230 Pac. 70, the court said:

"Warranty sounds in contract, fraud sounds in tort, and liability predicated on breach of warranty is contract and not tort liability. The assertion that plaintiffs could sue on the contract of warranty within two years after discovery of the fraud must mean that they could sue on the contract of warranty within two years after discovery of the breach of warranty, and consequently does not state the law. The subject received careful consideration in the case of *Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051." (p. 79.)

Later cases cited and approving the rule of *Railway Co. v. Grain Co.*, supra, are *Blitz v. Metzger*, 119 Kan. 760, 241 Pac. 259; *Emanuel Home v. Bergin*, 127 Kan. 593, 274 Pac. 284; *City of Coffeyville v. Metcalf*, 134 Kan. 361, 5 P. 2d 807.

On this question defendants cite the earlier cases of *Duvall v. Simpson*, 53 Kan. 291, 36 Pac. 330, followed by *Coal Co. v. Miller*, 88 Kan. 763, 129 Pac. 1170. These cases adopted the contrary theory held by some courts, and while they were not expressly overruled, the long line of decisions mentioned, following and approving the theory adopted in *Railway Co. v. Grain Co.*, supra, in effect does overrule them, and the court has, down to the latest of the decisions on this point, adhered to the rule that exceptions may not be added to those prescribed by the legislature nor implied, and that the fact that a party does not know that he has a cause of action does not prevent the running of the statute of limitations, and the rule of these later cases must be now regarded as controlling.

Froese and his wife had knowledge of the so-called mistake in the deed signed by them. It was recorded in 1903, which gave them knowledge of its contents. They learned of the mistake in the description, if there had been one, when the mortgages were given in 1911, when they quoted the descriptions, and there is testimony that about five years prior to the trial Froese discussed the description of the land sold with the register of deeds. Even if their theory of the law were the correct one, he would be barred by the statute of limitations.

There is a claim that the township did not have the possession of the land purchased and improved, and that grass was cut on the road and small trees taken out of the banks of the creek by Froese

and others. The fact that grass was cut out under the circumstances was done by Froese on sufferance and gave no protection to him against his deed, which he had made. (*McNeal v. Jordan*, 28 Kan. 7.) Regier, the plaintiff, had obtained a mineral lease and obtained such possession as a lessee ordinarily obtains on vacant land leased for oil and gas purposes.

Another claim made here is that the deed conveyed the land for a highway, and the township could only use it for highway purposes. The township is a municipality with the right to purchase real estate for an appropriate public purpose, and the sale made to it was by a warranty deed. It recited that the purchaser was, "to have and to hold the same, together with all and singular, the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining forever." And there is a covenant to warrant and defend the title against any person or persons whatsoever. There is no provision in the deed as to the limit of the use, and it did not contain any reversionary or forfeiture clause. The claim is not open to the defendants, at least at this time, and in the absence of a specific provision on the question of contesting it, it must be done by the state. In McMillin on Municipal Corporations, 2d ed., § 1226, it is said:

"The power of a municipality to purchase or otherwise acquire real property can be questioned only by the state. The capacity of a municipal corporation to take a conveyance of land cannot, after the transfer has reached completion, be called in question in a collateral way, but this may be contested only by the state." (Citing many authorities.)

On the general question of the right of a municipality to sell property purchased for a public purpose, see, also, *Finney County Comm'rs v. Welch*, 133 Kan. 258, 299 Pac. 600.

Some other questions are discussed by counsel, and an examination of the same shows them to be without special merit.

We think the court rightly found that Froese was not entitled to equitable relief, and therefore its judgment is affirmed.