No. 34,299

VICTOR TRAVIS et al. (Plaintiffs); OLEN C. SEAMANS, *Appellant*, v. PEARL GLICK et al. (KENNETH CHARLES SEAMANS, Intervenor, *Appellee.*)

(96 P. 2d 624)

Opinion on rehearing filed December 9, 1939. Original opinion adhered to. (For original opinion of reversal see *ante*, p. 132, 91 P. 2d 41.)

*D. F. Stanley,* of Mankato, for the appellant.

*J. W. Ross* and *J. R. White,* both of Mankato, for the appellee.

OPINION ON REHEARING

The opinion of the court was delivered by

SMITH, J.: This was an action to partition real estate. The trial court granted the prayer of an intervening petition, reformed a conveyance and held the intervenor to be the owner of certain real estate. This appeal is here on a rehearing. (For original opinion of reversal see *ante*, p. 132, 91 P. 2d 41.) After that opinion was handed down a rehearing was allowed and the hearing set for October.

It will not be necessary to set out the facts in this opinion, since they are set out fully in the former opinion. The trial court granted reformation of the conveyance on an intervening petition.

This court on the previous appeal held that the relief for which the intervenor asked in his petition was barred by the statute of limitations, and reversed the judgment of the trial court. The intervening petition charged the plaintiff with fraud in securing the conveyance or, in the alternative, with mistake. The trial court did not find the plaintiff guilty of fraud, but did find that both grantor and grantee had been mistaken as to the actual interest in the real estate owned by the grantor.

In the petition for a rehearing, and later, in the argument in this court, intervenor complains that this court considered the appeal as though the trial court had found the plaintiff guilty of fraud, whereas the court found mutual mistake.

We have examined the record again and have concluded that there is some ground for the criticism. Our opinion is not as clear as it should be. Accordingly we have examined the authorities on the point of when the statute of limitations begins to run against a cause of action to reform a conveyance on account of mutual mistake. This conveyance was made September 27, 1927. The defendant became of age September 26, 1927. He filed this petition in April, 1937. The intervenor argues that he did not learn of the mistake until a short time before he brought his action and that the statute did not begin to run until he had discovered it.

The reference to fraud in the former opinion was brought about by the fact that the court found a confidential relationship existed between the intervenor and his father from the time when the conveyance was made in 1927 until just before he filed his action in 1937. At the same time that the intervenor urges that the trial court took fraud out of the case by the findings made he argues the case here as though this relationship of the parties prevented the statute of limitations from running against his cause of action. The trouble about that argument is that if the father was mistaken, as the trial court found, then the relationship with his son, confidential or otherwise, would have no effect on the running of the statute of limitations. He could not be guilty of fraud if he was mistaken about the true facts.

It appears that the will of Isaac Nees, the grandfather of the intervenor, was filed for probate in Jewell county June 12, 1922, and under it appellant's mother was given a fee-tail estate. The partition action of *Allen v. Nees* was filed in the Jewell county district court and decided before the death of the mother, and hence before

the execution of the deed we are considering. In that action her title in fee tail on lands partitioned to her was adjudicated. When the intervenor became of age he was bound to take notice from the public records of his own title to the property. These records would have advised him that the court had held in effect that he had inherited one-fifth of the property. Irrespective of whether the statute started to run when the claimed mistake was made or when it was discovered, it was running against this cause of action when the deed was given September 27, 1927.

There remains, then, the question of what statute applies. The intervenor argues for the first time on the rehearing that the action was one for recovery of real property and that the statute of limitations which applies to it is G. S. 1935, 60-304, 4th subdivision. This section provides that the period within which such actions may be brought is fifteen years. We are not furnished any authorities to this effect and we have concluded that the section does not apply.

Since this is an action for relief on the ground of mutual mistake, we hold that it is governed by G. S. 1935, 60-306, 6th subdivision. That section reads:

"An action for relief not hereinbefore provided for can only be brought within five years after the cause of action shall have accrued."

As has been demonstrated heretofore, about ten years elapsed between the time when the statute started to run and the commencement of this action. The question of whether the statute was tolled was settled by the former opinion and will not be reconsidered here.

In addition to what has been said here there is another reason why the decision announced in the former opinion will not be disturbed. In that opinion we said:

"This action was one to declare a constructive trust to set aside or reform a deed. It was a suit in equity. Apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. We have concluded that there was such a change of circumstances here, in that the land has depreciated to such an extent that the plaintiff will not realize the amount he put into it, and the plaintiff having paid off a large mortgage in reliance upon the agreement, the above facts, together with the delay in bringing the action, constituted laches. (See *Thompson v. Milliken,* 93 Kan. 72, 143 Pac. 430; *Rice v. Kilworth,* 132 Kan. 418, 295 Pac. 700; *Edwards v. Moore,* 143 Kan. 447, 54 P. 2d 983, 19 Am. Jur. 339.)" (p. 142.)

Nothing was said in the petition for a rehearing or in the briefs on the rehearing to cause us to change the above.

We therefore adhere to our original opinion of reversal.

ALLEN, J. (dissenting) : In 3 Scott on Trusts, page 2355, it is said:

"As has been stated, the beneficiaries of an express trust are not barred by laches or by the statute of limitations from enforcing the trust merely because of lapse of time; and it is only where the trustee has repudiated the trust to the knowledge of the beneficiaries that they may become barred from enforcing the trust. So, also, by the weight of authority the beneficiaries of a resulting trust will not be barred from enforcing it merely because of the lapse of time if the trustee has not repudiated the trust to his knowledge. On the other hand, a constructive trustee ordinarily holds the property adversely to the beneficiary, and if the beneficiary knows of the circumstances giving rise to the constructive trust, he may be barred by laches if he fails to sue within a reasonable time. Much depends, however, upon the circumstances on which the constructive trust is based. If it is based upon fraud and there is no fiduciary or confidential relation between the parties, the defrauded person will be barred if he does not sue with reasonable promptness after discovering the fraud. Indeed, where the defrauded person has received consideration for the property, he must with reasonable promptness elect whether to rescind or ratify the sale, and he will not be permitted to speculate on a possible rise or fall in the value of the property. Similarly, where a person has sold property under a mutual mistake, he cannot set aside the sale unless he elects to do so within a reasonable time after discovering the mistake. In cases like this, where there is an election of remedies, the right to set aside the sale must be exercised promptly or it is lost.

"Where the situation does not involve an election of remedies the right to enforce a constructive trust will not be so quickly barred. In such a case, if the holding by the constructive trustee is adverse to the beneficiary, the beneficiary will normally be barred by laches if he knows or ought to know of the circumstances and fails to sue within a reasonable time. Ordinarily he will be barred after the lapse of the period fixed by the statute of limitations for actions at law in analogous cases. Indeed, in some jurisdictions the statute of limitations is expressly applicable to proceedings in equity to enforce a constructive trust.

"Where, however, the beneficiary of a constructive trust has no reason to believe that the constructive trustee is holding the property adversely, the beneficiary will not be barred by laches even though he knows of the circumstances giving rise to the constructive trust. Thus, where A conveys land to B who orally agrees to reconvey it to A, and B is in a confidential relation to A, B holds the property upon a constructive trust for A. In such a case A is not guilty of laches in failing to sue as long as B has not repudiated his promise."

The trial court found the conveyance was made under mutual mistake. Clearly the father held the title as trustee of a constructive trust. (Restatement, Restitution, section 163.) Under the circumstances the son was not required to make an election of remedies. As he had no reason to believe that his father was holding the property adversely, he was not barred by laches or the statute.

The broad proposition that the beneficiary of a constructive trust is barred by the statute of limitations regardless of circumstances is not supported by the decided cases or by the authoritative text writers. (Restatement, Restitution, section 148 and comment.) See cases cited in 2 Perry on Trusts (6th ed.), section 865, note a.