(719 P.2d 1)

No. 57,891

GARLAND PETER FERRELL, III, Executor of the Estate of Garland P. Ferrell, Jr., *Plaintiff-Appellee*, v. IRIS B. FERRELL, JANE FERRELL FASSETT, NANCY FERRELL FRAZIER and ELSIE H. FERRELL, *Defendants-Appellants*.

Opinion filed May 8, 1986.

Charles W. Harris and Steven J. Rupp, of Curfman, Harris, Stallings & Snow, of Wichita, and Gary W. Davis, of Crowe & Dunlevy, of Oklahoma City, Oklahoma, for appellants.

O. J. Connell, Jr. and Tim Connell, of Connell & Connell, of El Dorado, for appellee.

Before MEYER, P.J., CHARLES J. SELL, District Judge, assigned, and BARRY A. BENNINGTON, District Judge, assigned.

MEYER, J.: This is an action brought by the executor of the estate of Garland P. Ferrell, Jr., to determine the rights and interests of various members of the Ferrell family to surface and mineral interests in a parcel of land located in Butler County, Kansas. The district court quieted title in favor of the Ferrell estate. This appeal follows.

The instant action arises out of a complicated series of facts. Briefly stated, Garland P. Ferrell, Sr., and his wife Helen origi-

nally owned 5,282.66 acres of land in Butler and Elk Counties. At issue in this case is certain real property in Butler County upon which oil was being produced known as the "Holly Lease" acreage.

Pursuant to a family settlement agreement entered into by the surviving children and grandchildren of the Ferrell family, the probate court ordered distribution of the Holly Lease acreage as follows: the surface rights were given to Lloyd Ferrell and the mineral interests were given to Garland Ferrell, Jr., for "as long as oil and gas continues to be produced therefrom. At and upon cessation of production, title to said minerals shall revert unto [Lloyd Ferrell]."

In December 1972, George Powers, attorney for Lloyd Ferrell, directed his partner, Phillip Frick, to prepare a number of deeds to carry out the terms of the settlement agreement. The deed governing the "Holly Lease" acreage was drawn up and sent to the attorney for Garland P. and Helen Ferrell's estate, with an accompanying letter stating the deed enclosed conveyed the "surface interests." Unfortunately, the actual deed as drawn up did not reserve the mineral interests to Garland Ferrell, Jr., and so conveyed both surface and mineral interests to Lloyd Ferrell, in clear contravention of the settlement agreement and the order of the probate court.

The deeds to the Ferrell acreage were filed in November 1973. From its origination in 1972 until 1976 no one connected with the transaction to the property noticed the deed to the "Holly Lease" acreage was in conflict with the settlement agreement. In 1976 a new well was drilled on the "Holly Lease" acreage and Lloyd Ferrell for the first time discovered the discrepancy in the deed. No reformation of the deed covering the property was made, however, and Lloyd Ferrell continued to allow Garland Ferrell, Jr., to receive all royalties connected with the "Holly Lease" acreage and to make payment of all taxes connected therewith.

On January 3, 1980, Garland Ferrell, Jr., died. His son, Garland P. Ferrell, III, was made executor of his father's estate. In April 1980 royalty payments under the "Holly Lease" ceased coming to the Garland P. Ferrell, Jr., family, and Garland Ferrell, III learned for the first time of the discrepancy in the "Holly Lease" acreage deed. On October 7, 1980, Garland Ferrell, III,

as executor of his father's estate, brought suit seeking to reform the "Holly Lease" acreage deed, and to quiet title in the estate of Garland P. Ferrell, Jr., for the beneficiaries under the decedent's will. Defendants, children of the deceased Lloyd Ferrell, answered, asserting that the statute of limitations on reformation of deeds was five years under K.S.A. 60-511(5) and that plaintiff had failed therefore to state a proper cause of action since the deed in dispute had been filed in 1973. Defendants further counterclaimed, seeking to have title to the mineral interests quieted in them and seeking to recover all amounts of royalties which had, under the terms of the deeds of record, wrongfully been paid the Garland P. Ferrell, Jr., family.

The district court found that plaintiff's action was one to quiet title and not simply one for reformation of a deed and thus was timely under K.S.A. 60-507, which provides a fifteen-year statute of limitations period for quieting title. The district court further found that defendants were estopped from denying the family settlement agreement which awarded the mineral interests of the subject property to Garland Ferrell, Jr. The court thus quieted title in favor of plaintiff and defendants appeal.

Defendants contend that because plaintiff's suit sought reformation of the quitclaim deeds governing the Holly Lease acreage, the action was one for reformation and thus untimely filed under K.S.A. 60-511(5), which provides only a five-year statute of limitations for reforming deeds.

Plaintiff contends, and the district court agreed, that the action was one to quiet title. Thus, plaintiff contends, the trial court correctly applied the K.S.A. 60-507 fifteen-year statute of limitations.

Clearly if plaintiff's action is determined to be one for reformation of a deed and not one to quiet title, the cause of action would be barred under K.S.A. 60-511(5). *Beams v. Werth*, 200 Kan. 532, 438 P.2d 957 (1968); *Palmer v. The Land & Power Co.*, 180 Kan. 492, 306 P.2d 152 (1957); *Travis v. Glick*, 150 Kan. 132, 91 P.2d 41, *aff'd on rehearing* 150 Kan. 718, 96 P.2d 624 (1939). Although plaintiff attempts at length to distinguish each of the above cases, plaintiff's arguments are misplaced. The five-year statute of limitations period for reformation of a deed is not a matter for case-by-case interpretation, but is a settled rule of law. As stated by the court in *Beams*:

"Prior decisions confirm that an action to reform a deed on the ground of mutual mistake of the parties must be brought within the five-year period of the statute of limitations. (G.S. 1949, 60-306, *Sixth: Travis v. Glick*, 150 Kan. 718, 96 P.2d 624; and *Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 30 P.2d 136.) There is no indication in any of the commentaries on K.S.A. 1967 Supp. 60-511(5) that any change was intended regarding this section of the statute of limitations in the new code of civil procedure." 200 Kan. at 544.

Thus, in order for plaintiff's action in this case to be timely, it must either have been one to quiet title (without the inclusion of a reformation of deed request), or one to reform a deed only. If the latter, the statute of limitations would have to have been tolled in order for the present action to be timely.

An action to quiet title is an action "brought by any person claiming title or interest in personal or real property, including oil and gas leases, mineral or royalty interests, against any person who claims an estate or interest therein adverse to him or her, for the purpose of determining such adverse claim." K.S.A. 60-1002. In the present case, defendants claim the right, title, and interest in and to the mineral rights of the "Holly Lease" acreage, and have as proof of that claim two quitclaim deeds properly filed containing no reservation of mineral interests. This is a position adverse to plaintiff who claims that, by virtue of the 1972 family settlement agreement and the order of the probate court, the Garland Ferrell, Jr., estate is entitled to all mineral interests stemming from the "Holly Lease" acreage. We thus have a factual situation which appears to meet the definition of a quiet title action: two parties asserting adverse interests with regard to certain mineral rights. It is undisputed, however, that plaintiff seeks not only to quiet title, but to reform the quitclaim deeds governing the property. As discussed below, this, to us, renders plaintiff's action one to reform a deed for statute of limitation purposes.

In *Palmer v. The Land & Power Co.*, 180 Kan. 492, Syl. ¶ 3, it is stated:

"While the statute of limitations does not bar an action to quiet title, where in order for the title to be quieted a deed must be reformed, the action will be treated as one to reform a deed and the statute [of limitations for reforming a deed] will operate."

In *Palmer*, the plaintiff and her husband entered into a written contract to buy a piece of land over a period of time. Upon full payment being made, they were to get a deed, subject to a

reservation of one-half the minerals in the defendant seller. Later, the plaintiff claimed an oral agreement was entered into that, if the contract was paid off early, they would get the land without reservation. They paid the purchase price prior to the due date and such a deed was given. Later, a mistake was found in the legal description and the plaintiff asked the defendant for a new deed, which was then given, but which contained a reservation of all the minerals to the defendant.

Suit was then filed by the plaintiff to quiet title. The defendant, more than five years after the original deed was given, then amended its answer and cross-petitioned to allege that the original deed without the reservation was the result of a mutual mistake. The court held that the defendant's claim was barred:

"It is clear the cross petition was filed too late. Defendant met this by arguing the cross petition was an action to quiet title and the statute does not run against such actions. While the relief asked for in the defendant's cross petition was in the nature of a suit to quiet title, still in order that defendant's title might be quieted the deed, Exhibit 2, must be reformed by striking from it the reservation. Under such circumstances, we will treat the action as one to reform a deed." *Palmer*, 180 Kan. at 500.

Although plaintiff attempts to distinguish *Palmer* from the instant case, they do so only upon the factual distinction that the court in *Palmer* did not mention whether production of oil existed upon the land in question, nor did it specify those persons, if any, receiving royalty payments. Plaintiff's attempted distinction of *Palmer* is without merit. As illustrated by the above quotes, the court at no time limits its holding to cases where the mineral rights to the subject property are non-productive.

In sum, *Palmer* has never been overruled, and in fact has been cited with approval more recently in *Beams v. Werth*, 200 Kan. at 544. Accordingly, we conclude the trial court erred in finding plaintiff's action to have been timely filed as a quiet title action under K.S.A. 60-507.

Since plaintiff's suit was required to be filed within the K.S.A. 60-511(5) five-year statute of limitations period for an action to reform a deed, plaintiff's suit is timely only if the statute were tolled in some manner. Regarding this, the trial court, although ruling plaintiff's action was a quiet title action, also stated the suit was timely even under a five-year statute of limitations:

"2. That the statute of limitations for reforming deeds is tolled where a party is in peaceable possession with no notice of any adverse claim or interest by a third party. *Klepper vs. Stover*, 193 Kan. 219 (1964), and *Strode vs. Spoden*, Ky. 284 S.W.2d, 663 (1955). The Court finds that Garland P. Ferrell, Jr., was in peaceable possession of the mineral interests in the "Holly Lease" from 1972 until 1976, and no claim nor other adverse interest was asserted by Lloyd Ferrell during that period of time. Consequently, the statute of limitations did not begin to run against Garland P. Ferrell, Jr., or his estate until 1976 when a dispute arose between Lloyd Ferrell and the oil company purchasing the oil from the Tasheff well.

"3. That less than five years has elapsed from the time that the error in the deed prepared by Phillip Frick was discovered, and the Plaintiff has filed suit within the applicable statute of limitation."

Defendants contend they are not estopped from asserting a statute of limitations defense because equitable estoppel only applies where a party has taken some affirmative action to lull his adversary into complacency. Defendants contend that as neither side to this dispute knew of the mistake in the quitclaim deeds, there could not have been any affirmative action on the part of Lloyd Ferrell such that the doctrine of equitable estoppel could be invoked.

Defendants are correct in their interpretation of the law regarding equitable estoppel. "One general statement of the doctrine which runs throughout the cases in which it is asserted is that a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute has run, will be precluded from relying on the bar of the statute." *Coffey v. Stephens*, 3 Kan. App. 2d 596, 598, 599 P.2d 310 (1979), citing *Bowen v. Westerhaus*, 224 Kan. 42, 48, 578 P.2d 1102 (1978), and *Safeway Stores v. Wilson*, 190 Kan. 7, 14, 372 P.2d 551 (1962).

Although it may be true, as defendants assert, that because of his lack of knowledge concerning the mistakenly drawn deeds, Lloyd Ferrell may not have taken any "affirmative action" between 1972-1976 by which to lull Garland Ferrell, Jr., into a false sense of security and thus toll the statute of limitations, the factual situation as it appears before us changed in 1976.

In 1976 Lloyd Ferrell gained knowledge of the conflict between the family settlement agreement of 1972 and the deeds filed of record in 1973. This knowledge is evidenced by the fact Lloyd Ferrell contacted the attorney for the estate of Garland and Helen Ferrell, seeking information regarding his discovery that the quitclaim deeds conflicted with the settlement agreement.

When the estate's attorney was unable to address his concerns, Lloyd Ferrell contacted his own attorney for an opinion on the matter.

To invoke the doctrine of equitable estoppel, a party need not have "planned or contrived with the deliberate intent to lull [the opposing party] into a false sense of security." *Coffey*, 3 Kan. App. 2d at 600. Rather, the mere fact of remaining silent, when possessing material knowledge not held by another, is sufficient to toll the statute where that silence causes another to fail to take timely action which he would have taken had he possessed such knowledge. See *Klepper v. Stover*, 193 Kan. 219, 392 P.2d 957 (1964). In the instant case, Lloyd Ferrell's silence concerning the conflict between the deeds and the settlement agreement combined with his continued failure to object to the royalty payments made to Garland Ferrell, Jr., and his allowing Garland to pay all taxes associated therewith is sufficient conduct to invoke the doctrine of equitable estoppel. Accordingly, we hold that the defendants are estopped to assert the statute of limitations.

In sum, the trial court found plaintiff's action to be timely as a quiet title action under K.S.A. 60-507, and also found plaintiff's action to be timely as one to reform a deed. However, the trial court concluded that the action was one to quiet title. This was error. Instead, we conclude that, although K.S.A. 60-511(5) imposes a five-year statute of limitations, defendants are estopped to assert this defense because of Lloyd Ferrell's conduct. Having so concluded, the decision of the district court finding plaintiff's action to be timely should be affirmed although the trial court was correct for the wrong reason. See *Farmers State Bank v. Cooper*, 227 Kan. 547, 556, 608 P.2d 929 (1980).

The defendants next contend the trial court erred in admitting evidence that was allegedly protected by the attorney-client privilege. Defendants object to all evidence admitted in the form of testimony and letters coming from the law firm of Foulston, Siefkin, Powers & Eberhardt, because George Powers was attorney for Lloyd Ferrell and all communications between the two were made within the confines of the attorney-client relationship.

It is difficult to address defendants' issue because defendants have failed to specify exactly which evidence they believe violates the attorney-client privilege, and because defendants have

not specified in precisely what manner each piece of evidence violates the rule of confidentiality. As noted by plaintiff, plaintiff's Exhibits Nos. 1 and 2 (petitions for probate of the wills of Garland P. and Helen Ferrell), 3 (warranty deed by Garland P. and Helen Ferrell to their three children), 20, 21 and 22 (quitclaim deeds from Elsie Ferrell and Garland Ferrell, Jr., to Lloyd Ferrell and a quitclaim from Jane Ferrell Fassett and Nancy Ferrell Frazier to Iris Ferrell) are not within the purview of the attorney-client privilege because all are documents of public record.

Plaintiff's Exhibits Nos. 4 (letter from George Powers to Garland Ferrell, Jr.'s, attorney, O. J. Connell, Jr., proposing settlement of Ferrell family dispute in 1971), 5 (letter from O. J. Connell, Jr., responding to George Powers' letter), 8 (letter from Powers to Connell proposing settlement), and 10 (letter from Phillip Frick to attorney of Garland and Helen Ferrell estate advising of filing of deeds) likewise cannot be considered to fall within the attorney-client privilege because these were transmittal letters between attorneys for both sides. Each attorney voluntarily shared information with the other and with their respective clients, thus waiving any right to have the information contained therein be considered confidential.

Plaintiff's Exhibits Nos. 11, 12, 14, 15, 16, 17, 18, and 19 are all letters from the attorney representing the Garland and Helen Ferrell estate to Koch Oil Co. advising it of the family settlement agreement provisions and division orders of the company showing changes and are not within the Lloyd Ferrell-George Powers attorney-client relationship at all and so may not be objected to by defendants.

Plaintiff's Exhibits Nos. 6, 7 and 9 are all notes by Lloyd Ferrell to his attorney, George Powers. These notes are all addressed to George Powers only and contain Lloyd Ferrell's personal thoughts and comments during the negotiating period leading up to the family settlement agreement. The notes indicate Lloyd Ferrell knew the settlement agreement was giving the mineral interest in the "Holly Lease" acreage to Garland Ferrell, Jr. At trial George Powers testified these notes were given while an attorney-client relationship existed between him and Lloyd Ferrell. The trial court nevertheless admitted the notes over defense counsel's objection. Based upon Powers'

236

testimony that the notes were given within the confines of the attorney-client relationship, and because no evidence was introduced to the contrary, it was error under K.S.A. 60-426 to admit the exhibits and the testimony of George Powers concerning these exhibits. This is especially true considering the vehement objections of Mr. Powers.

Plaintiff's Exhibit No. 13 is a letter from George Powers to Lloyd Ferrell stating that Powers had examined the documents and discussions leading up to the division of the "Holly Lease" acreage surface and mineral rights and that it was his belief that Garland Ferrell, Jr., owned the mineral interests despite the absence of the reservation of such in the deeds of record. Again, based upon Powers' testimony that this letter was written within the confines of the attorney-client relationship and because there was no evidence admitted to the contrary, the letter and testimony concerning the contents of the letter were erroneously admitted under K.S.A. 60-426.

In sum, plaintiff's Exhibits Nos. 6, 7, 9, 13 and testimony relative to the content of those exhibits appear to have been erroneously admitted by the trial court. Despite this, enough evidence was properly admitted to sustain a finding that Lloyd Ferrell, in 1976, knew of the discrepancy between the deeds of record and the family settlement agreement, but failed to disclose this knowledge to Garland Ferrell, Jr., thereby preventing him from seeking any legal corrective action within the five-year statute of limitations. The trial court's error in admitting the above-mentioned evidence did not prejudice the substantial rights of defendants and so affords no basis for reversal of judgment and may be disregarded. *City of Ottawa v. Heathman,* 236 Kan. 417, 426, 690 P.2d 1375 (1984).

Affirmed.