(210 P.3d 676)

No. 100,497

MARGARET RUSSELL LAW, *Appellant*, v. LAW COMPANY BUILDING ASSOCIATES, A KANSAS LIMITED PARTNERSHIP, AND THE LAW COMPANY, INC., A KANSAS CORPORATION, *Appellees*.

Petition for review granted September 7, 2010.

Opinion filed July 10, 2009.

*F. James Robinson, Jr.*, of Hite, Fanning & Honeyman, LLP, of Wichita, and *Michael R. Levin*, of Baker & Hostetler LLP, of Orlando, Florida, for appellant.

*Thomas D. Kitch*, *Ron Campbell*, and *Roarke R. Gordon*, of Fleeson, Gooing, Coulson & Kitch, LLC, of Wichita, for appellees.

Before GREENE, P.J., PIERRON and GREEN, JJ.

GREENE, J.: Margaret Russell Law (MRL) appeals a summary judgment against her on claims of breach of contract, breach of implied covenant of good faith and fair dealing, reformation of contract, and declaratory judgment, all of which were asserted by her against Law Company Building Associates (LCBA) and The Law Company (Law Co.) (collectively referred to as "defendants") arising from a financing agreement on a commercial building in Wichita. Concluding the district court erred in terminating all of

her claims against defendants based on the statute of limitations, we reverse and remand for further proceedings.

### *Factual and Procedural Background*

This appeal is the latest installment of what has been a contentious relationship between Law Co. and the ex-spouse of its founder, engendered by the founder's property settlement and alimony obligations to MRL. In a series of transactions begun in the late 1970s, Law Co. and its related building holding company, LCBA, became obligated to pay MRL certain economic benefits as a substitute for the court-ordered divorce settlement obligations of the founder. These transactions initially led to previous litigation and an appeal to this court. See *Law Company Building Assocs., v. Law*, No. 67,545, unpublished opinion filed April 2, 1993. Detailed facts regarding the initial transaction, the previous dispute between the parties, and the court's resolution of that dispute are available in that opinion.

Material to this appeal is that the parties entered into a "Financing Agreement" in 1984 to preserve MRL's economic interests in the building and financing of a new corporate headquarters' building for Law Co. called "The Riverview Building." The Financing Agreement governed the sale or disposition of MRL's interests in a predecessor property and granted her an "equity participation" in the new building, pegged at 11% of the "sale balance" as defined in the agreement. Key to this appeal is a provision in the agreement that "the Equity Participant [MRL] shall be entitled to 11% of the liquidation proceeds upon expiration of the term of LCBA in 2004 or earlier dissolution. (Paragraph 4(e) shall apply if the term of LCBA shall be extended by the partners thereof to a date later than December 31, 2004)." The "term of LCBA," a Kansas limited partnership, was apparently contemplated to be 20 years based on terms and conditions of related instruments in connection with the financing of the project by industrial revenue bonds issued by the City of Wichita.

Paragraph 4(e) of the Financial Agreement is entitled "Discharge of Equity Participation" but—curiously—does not speak to

any such "discharge" in the event of LCBA term extension beyond the December 2004 date. Instead, the paragraph begins as follows:

"The Equity Participation shall apply to each Refinancing but is discharged upon completion of one of more transactions which, taken together, amount to a Sale of all of the IRB Project or all LCBA partnership interests. Whether the Equity Participation is discharged by a single Sale or a series of partial Sales, the following shall apply."

The balance of the paragraph details how the equity participation would be calculated in the event of one or more partial sales, including three detailed examples of such partial sales.

The heart of MRL's argument in this appeal is based on a provision in a prior draft of paragraph 4(e) that does not appear in the final instrument but provided:

"Further, if, (i) the partners of LCBA extend the term of LCBA to a date later than December 31, 2004, or the liquidation of LCBA does not commence by April 15, 2005 for any other reason, and (ii) the Equity Participation has not previously been discharged, then the Equity Participant shall the have a right to liquidation of the Equity Participation upon one hundred twenty (120) days' advance notice to LCBA."

On June 24, 2002, Marc A. Porter, vice president of The Law Company and general partner of LCBA, certified that the LCBA Partnership Agreement was amended to extend the term of the LCBA partnership until December 31, 2024, unless dissolved sooner. Accordingly, defendants argue that MRL's equity participation need not be discharged due to this extension. Porter, also The Law Company's chief financial officer, executed an affidavit stating:

"Pursuant to the terms of the Promissory Note, Law Company paid Margaret Law the principle sum of $406,836.19 when the note matured on December 31, 2004. The total amount of money paid to Margaret Law for the Market Street Property, including interest, during the period from April 10, 1984 through December 31, 2004, was approximately two and one-fourth million dollars ($2,250,000)."

The extension of LCBA was placed of record and filed with the Kansas Secretary of State on June 27, 2002.

MRL raised multiple claims in her petition. First, she claimed LCBA's refusal to pay the equity participation was a breach of

contract under the "Financing Agreement as properly construed." Second, she claimed LCBA breached an implied covenant of good faith and fair dealing under the "Financing Agreement as properly construed" by failing to pay the fair liquidation value of the equity participation in a timely fashion. MRL's third count requested a reformation of the Financing Agreement "to make it express the true intent of the parties and that judgment be entered in her favor on the reformed contract for damages based upon the value of the Equity Participation." In her last count, MRL requested a declaratory judgment on whether the omitted language should be included in the final Financing Agreement, whether she is entitled to immediate liquidation of her equity participation, and also a determination of the value of the equity participation. LCBA's answer contained a denial of MRL's claims and also a counterclaim requesting a judgment declaring that all amounts due under the Promissory Note were paid in full.

LCBA filed a motion to dismiss/motion for summary judgment arguing MRL's claims were barred by the applicable statute of limitations. Alternatively, LCBA argued: (1) Kansas law precluded MRL from offering parole evidence that would alter or amend the terms of the Financing Agreement; (2) MRL's claim for breach of good faith and fair dealing was derivative of the reformation claim; and (3) MRL should be estopped based on the prior lawsuit from arguing the Financing Agreement did not reflect the parties' intent.

The district court granted a dismissal of MRL's lawsuit, concluding in toto:

"1. Considering this matter in the light most favorable to the plaintiff and assuming the existence of mutual mistake, this is a contract reformation claim. All matters that are argued and presented in this case by plaintiff are subsumed within that claim.

"2. Plaintiff's claims are barred by the five-year statute of limitations set forth in K.S.A. § 60-511. Plaintiff's estoppel and unclean hands arguments do not have merit and do not preclude application of this statute of limitations.

"3. Plaintiff's reliance on *Klepper v. Stover*, 193 Kan. 219, 392 P.2d 957 (1964), is also misplaced.

"4. Plaintiff's claims of *ultra vires* have not been sufficiently presented."

MRL filed a motion to alter or amend the district court's judgment. She claimed the court erroneously used the statute of limi-

tations applicable only to the reformation claim in order to dismiss the separate and independent claims for breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory judgment. She also claimed the district court should not have dismissed the reformation claim or her *ultra vires* contentions. The district court took the matter under advisement after oral arguments and later dismissed the motion without comment on a motions minutes sheet.

Margaret appeals.

### *Standards of Review*

Our standard of review when a motion to dismiss has been treated as a motion for summary judgment matches that for summary judgment generally. *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 623, 205 P.3d 1265 (2009). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may be reasonably drawn from the evidence in favor of the party against whom the ruling is sought. *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

Despite the required evidentiary bias in favor of the party opposing a motion for summary judgment, an adverse party must still come forward with evidence to establish a dispute as to a material fact. K.S.A. 60-256(e). In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. 283 Kan. at 128.

This appeal also necessitates a review of the district court's decision applying the statute of limitations. The interpretation and application of a statute of limitations is a question of law for which an appellate court's review is unlimited. *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1027, 58 P.3d 1284 (2002). Likewise,

this court's review of the district court's conclusions of law is unlimited. *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 472, 15 P.3d 338 (2000).

### Did the District Court Err
### in Terminating All of MRL's Claims
### Based on the Statute of Limitations?

MRL initially argues on appeal the district court erred in terminating all of her claims based on the statute of limitations, by applying a rule that the statute begins to run on reformation claims at the time of contract execution. She argues that even if the statute had run on her reformation claims (which she disputes), the court erred in "collapsing" her alternative claims into the reformation claims, without recognizing other claims as stand-alone contract claims that should not be subject to application of any unique rule as to when the statute begins to run on a reformation claim. We begin by analyzing these "stand-alone" claims and the proper application of the statute of limitations to each.

### *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Count II of MRL's petition alleged that the defendants breached the implied covenant of good faith and fair dealing

"by failing to pay the fair liquidation value of the Equity Participation in a timely fashion; by failing to pay the full amount due under the Promissory Note; by attempting to inaccurately depict the Equity Participation as minimal by claiming that usual and customary repair and maintenance expenses and other operating expenses should be credit against the value of the Equity participation; by knowingly and wrongfully attempting to take advantage of an inadvertent scrivener's error that is contrary to the intent of the parties; and by knowingly refusing to pay the funds due to Plaintiff in the hope that she would be unwilling or unable to assert her rights."

Obviously, some of these assertions are related—if not dependent upon—MRL's reformation claim, and to that extent it is understandable that the district court applied its perception of the rules for applying the statute of limitation to reformation claims. Specifically, MRL's claim that the defendants attempted "to take advantage of an inadvertent scrivener's error that is contrary to the

intent of the parties" opens Pandora's box to the reformation claim and related issues.

Some of the assertions in Count II, however, can be seen as independent of a claim for reformation, *i.e.* they are cognizable without any consideration of the "scrivener's error" or other "mistake" giving rise to the purported anomalies of paragraph 4(e). For example, MRL elaborates this claim in her reply brief and at oral argument by suggesting that LCBA has no current legitimate business purpose and that the extension in its term was "to delay paying a long-promised Equity Participation to an 80 year old woman." Particularly due to her advancing age (83), she argues that the agreement as construed by defendants means that they control when—if ever—she will be able to realize her equity interest in the new building. This claim—so articulated—has no basis in allegations regarding any "mistake" in the instrument itself, but rather is based on an implied obligation pursuant to the agreement as executed.

Before the district court, MRL stated this claim (and supported it with uncontroverted fact or controversions of the defendants' purported uncontroverted facts) as follows:

"[T]he Defendants have attempted to avoid their obligation to pay the Plaintiff the amount of money owed for her Equity Participation simply by executing a document purporting to unnecessarily extend the term of the LCBA. The extension served no legitimate business purpose. The Defendants' officers apparently did not seek board approval for this action, raising the legitimate inference that the Defendants' officers were fully aware that the board might perceive this unnecessary action as bad faith and unfair dealing, and, frankly, a tawdry effort to cheat the ex-wife of The Law Company's founder. The record contains more than ample basis to deny the Defendants' motion and submit this matter for trial."

Kansas courts imply a duty of good faith and fair dealing in every contract. Parties shall not intentionally and purposely do anything to prevent the other party from carrying out his or her part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Daniels v. Army National Bank*, 249 Kan. 654, 658, 822 P.2d 39 (1991) (quoting *Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792 [1987]), both cited and quoted with approval in

*Kansas Baptist Convention v. Mesa Operating Limited Partnership*, 253 Kan. 717, 724-26, 864 P.2d 204 [1993]); see 17A Am. Jur. 2d, Contracts § 370. Contrary to the argument advanced by defendants, a party can breach this implied covenant *absent* a specific covenant to which it must apply. In fact, our Supreme Court has noted that Kansas courts will impose an obligation of good faith that would override express contract terms, except in the area of employment-at-will. *Kansas Baptist Convention*, 253 Kan. at 724-26.

Our Supreme Court's opinion in *Kansas Baptist Convention* demonstrates the viability of such a claim under remarkably similar circumstances. The court held that where one party to a contract has gained the ability to destroy or injure the economic interest of the other party, a claim may lie for breach of the implied covenant even though no express provisions of the contract have been breached. 253 Kan. at 725-26. Here MRL, similarly alleges that the ability of LCBA to forever deny realization of her equity participation by unwarranted extensions has breached the same implied covenant. We express no opinion on the merits of her claim; we simply hold that such a claim is not governed by the unique accrual upon execution rule applicable to reformation claims.

Where claims for relief based on the implied covenant of good faith and fair dealing have been joined with claims for reformation, we note that federal district courts of Kansas have applied the unique rule of accrual at execution of the instrument in dismissing reformation claims but have refused to dismiss parallel claims sounding in contract or tort. See, *e.g.*, *Graphic Technology, Inc. v. Pitney Bowes, Inc.*, 968 F. Supp. 602 (D. Kan. 1997); *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154 (D. Kan. 1990). We essentially agree with these federal court decisions in concluding that the district court erred in terminating MRL's claim for breach of an implied covenant based on the unique accrual at execution rule for reformation claims.

Resolving all facts and inferences which may be reasonably drawn from the evidence in favor of MRL, as we are required to do by our standard of review, we conclude that MRL's claim for relief based on an implied covenant of good faith and fair dealing

should not have been "collapsed" into her reformation claim and was entitled to independent treatment for purposes of the statute of limitation. Although we express no opinion on the merits of her claim, we are heavily influenced by the fact that defendants' extension of LCBA for another 20 years placed any discharge and realization of MRL's equity participation to a timeframe wherein MRL would be 103 years old, and there would be no bar to further if not indefinite extension at that time. We conclude MRL should have the opportunity to present such claims and that the application of the unique accrual rule for reformation claims was inappropriate.

Clearly, for such claims, a 5-year statute applies and begins to run on the date of breach, which here was in 2005, making MRL's claim timely. K.S.A. 60-511(1); *Smith v. Amoco Production Company*, 272 Kan. 58, 31 P.3d 255 (2001) (5-year statute of limitations applied to claim based on implied covenant of good faith and fair dealing arising from oil and gas lease); *Nelson v. Nelson*, 38 Kan. App. 2d 64, 83-84, 162 P.3d 43 (2007) (statute begins to run from date of breach).

Based on these conclusions, we reverse the district court insofar as it dismissed MRL's claim based on the implied covenant of good faith and fair dealing and her related claim for declaratory judgment on this claim, and we remand for further proceedings on these claims.

## *Breach of Contract*

To the extent MRL can shoulder her burden on remand in pursuing her claim based on the implied covenant of good faith and fair dealing, we view her claim for express breach of contract (Count I of Petition) as surviving, at least in part. As noted by MRL on appeal, this count neither alleges any "mistake" nor seeks reformation of the Financing Agreement. Instead, it claims—in part—that the defendants have breached the terms of an associated promissory note and that MRL's equity participation has been unjustifiedly valued by defendants by debits that were not authorized by the agreement. This assertion is set forth in MRL's petition as follows:

"LCBA and the Law Company have further breached and anticipatorily breached the Financing Agreement as properly construed by failing to pay the full amount due under the Promissory Note and by wrongfully attempting to justify a minimal valuation of the Equity Participation by claiming that funds used for debt reduction, payment of the IRB bonds, usual and customary repair and maintenance and other operating expenses should be a credit against the Equity Participation to be paid to the Plaintiff."

Because this claim may be shown to be related to the claim for breach of an implied covenant—at least for the purposes of determining damages or a definitive declaratory judgment—we conclude it was error for the district court to terminate the claim on summary judgment. Accordingly, we also reverse the district court's termination of this claim *to this extent only* and remand for further proceedings.

### *Reformation of the Contract*

In granting summary judgment against MRL, the district court relied on a "line" of cases that established a rule that the statute of limitations begins to run on a reformation claim upon execution of the contract, despite later discovery of any basis for reformation. We examine this line of cases to determine its applicability to MRL's claim.

In *Regier v. Amerada Petrolem Corp.*, 139 Kan. 177, 30 P.2d 136 (1934), the defendants sought reformation of a 1902 deed of a small tract of real estate based on mutual mistake as to the size of the strip of land. The omission in the description was not discovered until 1932. The court said "[t]he action accrues when the contract is violated and not at the time that the plaintiff learns that it has been violated" and exceptions to the statute of limitations are not favored. 139 Kan. at 182. This case has been cited as the leading case in Kansas for the rule that reformation claims accrue upon execution of the contract, not at later discovery. See, *e.g.*, 66 Am. Jur. 2d, Reformation of Instruments § 88. MRL argues, however, that this rule has been limited to deeds and should not be extended to executory contracts.

In *Palmer v. The Land & Power Co.*, 180 Kan. 492, 306 P.2d 152 (1957), the plaintiff sought to quiet title and reform deeds for

real estate that had been executed in 1947 and 1949, alleging there was a mistake of the scrivener in the description of the property. The action was barred by then-existing version of K.S.A. 60-306, which the court said "provides that an action to reform a deed or to correct a mistake in conveyance must be brought within five years," citing *Regier,* 180 Kan. at 500. Again, this case addressed a claim for reformation of a deed.

In *Siegel v. Hackler,* 181 Kan. 316, 310 P.2d 914 (1957), the plaintiffs sought to reform a 1937 deed on the ground of ambiguity. The court decided the case based on a finding that there was no ambiguity, but it gratuitously quoted the rule that G.S. 1949, 60-306, Sixth, applies "to an action to reform a deed on the ground of mutual mistake, and it has been held that the statute commences to run from the date the mistake is made." 181 Kan. at 318. This case also addressed a claim for reformation of a deed.

In *Klepper v. Stover,* 193 Kan. 219, 392 P.2d 957 (1964), the court affirmed a grant of reformation relief on a 1954 lease despite the obvious statute of limitations problem, stating: "Generally speaking, in equity where mistake is sought to be corrected, limitation statutes do not begin to run on the cause of action until the time when the mistake is discovered or when by use of due diligence it ought to have been discovered. This is particularly true where a mistake is the basis of the gravaman of the action," citing 34 Am. Jur., Limitation of Actions § 174, p. 139. 193 Kan. at 221-22. It is difficult to square this case with *Regier* and its progeny, except that *Klepper* addressed reformation of a 25-year lease, and the claims were made within the period of that term.

The defendants argue that *Klepper* "involved a different doctrine—estoppel." Although the factual context of *Klepper* must be distinguished on this basis, we disagree that the authority has no instructive value to this appeal. We believe the court was clear in stating the rules applicable to an executory lease in a manner quite differently from the "line of cases" previously discussed, and because the subject of the reformation claim in *Klepper* was an executory lease, the rule was cited and stated to include a discovery rule to toll the statute under appropriate circumstances.

Finally, defendants cite *Ferrell v. Ferrell*, 11 Kan. App. 2d 228, Syl. ¶¶ 1, 2, 719 P.2d 1, *rev. denied* 239 Kan. 693 (1986), where the court specifically referred to the rule as one applying to "reformation of a deed" and applied it to preclude a belated action to reform a mineral deed. The court referred to the rule as follows:

> "Prior decisions confirm that an action *to reform a deed* on the ground of mutual mistake of the parties must be brought within the five-year period of the statute of limitations. (G.S. 1949, 60-306, *Sixth*; *Travis v. Glick*, 150 Kan. 718, 96 P.2d 624; and *Regier v. Amerada Petroleum Corp.*, 139 Kan. 177, 30 P.2d 136.) There is no indication in any of the commentaries on K.S.A. 1967 Supp. 60-511(5) that any change was intended regarding this section of the statute of limitations in the new code of civil procedure." (Emphasis added.) *Beams v. Werth*, 200 Kan. 532, 544, 438 P.2d 957 (1968).

We believe the language in this opinion clearly indicates that the *Ferrell* court recognized that the unique rule of accrual upon execution for reformation claims should be limited to situations where there is a challenge to a deed.

Our careful review and analysis of the authorities cited by the defendants and relied on by the district court has convinced us that the line of cases applying the unique rule of accrual upon execution to reformation claims has apparently been limited to claims for the reformation of a deed. Obviously, the applicable statute of limitations has occupied an essential and important function in cases addressing deeds or instruments of conveyance that are placed of record; the application of the rule in these cases is designed to set a maximum time period in which to bring an action and to give security to the possession and ownership of land as against those who have failed to bring their action within the prescribed period. The policy underpinning is clearly to promote marketable titles, but these beneficial effects of the rule are clearly inapplicable where the instrument sought to be reformed is an executory contract between the original parties and where an essential aspect of the agreement for performance, after 20 years, has allegedly been frustrated if not destroyed by one of the parties. Moreover, the recordation of the Financing Agreement subject to this appeal does not change this analysis.

We note that the general rule in most jurisdictions is consistent with the statement in *Klepper*, although some treatises recognize Kansas as embracing a minority rule—citing *Regier*.

> "As a general rule, the statute of limitations does not begin to run against the right to sue for reformation until the facts which constitute the fraud or mistake which is the ground for the reformation are discovered, or at any rate, until the time when, by use of due diligence, they ought to have been discovered by the party applying for the relief, or his privy.
>
> . . . .
>
> "The courts of some states apply the general rule that the statute commences to run at the accrual of the cause of action, that is, at the date of the execution or delivery of the instrument, sometimes on the theory that the statute has made no exception in this class of cases. [citing only *Regier* and a 1928 Tennessee case]." 66 Am. Jur. 2d, Reformation of Instruments § 88, p. 306.

Although this treatise reports *Regier* as establishing this minority rule, we conclude that *Klepper* and *Ferrell* clearly support the limited application of this rule to deeds. See *Kansas Baptist Convention*, 253 Kan. at 737 (court orders reformation of 40-year-old contract for unitization and operation of natural gas unit even though neither party sought this remedy on appeal).

We conclude the unique rule of accrual at execution promulgated by *Regier* and its progeny applies only to claims to reform deeds or instruments of conveyance that are placed of record, but does not apply to executory contracts as to claims made during their term of performance, even if such contracts are recorded. For this reason, we disagree with the district court in terminating MRL's reformation claim and remand for further proceedings on this claim as well as her claims based on an alleged breach of the implied covenant of good faith and fair dealing. We note, however, that MRL will have to shoulder the burden of establishing that she could not with reasonable diligence have discovered the basis for her claims more than 5 years prior to her suit.

Reversed and remanded.

PIERRON, J., dissenting: I respectfully dissent. This is an attempt to alter or "reform" a contract which was executed almost 30 years ago. The relevant facts appear in the majority opinion.

Because of the malign influence of a divorce, both parties were suspicious of each other, for apparently good reasons. The result was a very specific agreement considering the rights of the parties to certain real estate. All were represented by skilled counsel, and much negotiation went into the formation of the contract. The agreement apparently contemplated the likelihood of a sale or refinancing in the future of the real estate. Some of the main characters involved in the negotiations, after nearly 30 years, are now deceased.

The essential fact is that Margaret Law was not to get her share of the real estate until there was a sale or refinancing of the property. As things have worked out, it has not been to the economic advantage of the Law Company Building Associates and the Law Company to refinance or sell the property. In fact, such may well not occur in the near future and before the life span of Margaret Law ends. Essentially, the majority does not think this is fair.

No one can reasonably say the agreement is not clear, nor can it be said that the agreement is not being followed. Margaret Law is not being deprived of her ownership interest. Should she pass away before a refinancing or sale, like her ex-husband did, her interest will pass to her estate. She has not been able to liquidate her interest as fast as she would have hoped. This is not any breach of good faith and fair dealing. The appellees are exercising their rights under the contract as written, understood, and agreed to. The fact that Margaret Law does not benefit as much as she would if they would follow her wishes is not dishonesty on the part of the appellees. I would affirm. The statute of limitations has run. The deed is long done and fairly so.