**GRAPHIC TECHNOLOGY, INC., Plaintiff,**

v.

**PITNEY BOWES INC. and MONARCH MARKING SYSTEMS, INC., Defendant.**

**Civil Action No. 97–2040–GTV.**

United States District Court, D. Kansas.

June 19, 1997.

Douglas M. Weems, Angela D. Gupta, Teresa A. Woody, Spencer, Fane, Britt & Browne, Kansas City, MO, for Graphic Technology Inc.

Mark Moedritzer, Joseph G. Matye, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for Pitney Bowes, Inc.

Irvin V. Belzer, Robert J. Hoffman, R. Jeffrey Harris, Bryan Cave, L.L.P., Kansas City, MO, for Monarch Marking System, Inc.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This breach of contract action is before the court on the following:

(1) Motion for partial dismissal (Doc. 13) by defendant Pitney Bowes Inc. pursuant to Fed.R.Civ.P. 12(b)(6).

(2) Motion for partial dismissal (Doc. 16) by defendant Monarch Marking Systems, Inc. pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff has responded (Doc. 28), and opposes the motions. Each of the motions seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(6) of plaintiff's breach of contract claim alleged in

Count I of its amended complaint; of plaintiff's negligent misrepresentation claim set out in Count III; and of plaintiff's claim seeking reformation of a licensing agreement which is involved in this case alleged in Count VI. For the reasons set forth in this memorandum and order, the motions are granted with respect to plaintiff's breach of contract claim and claim for reformation based on mutual mistake (Counts I and VI), and denied with respect to the negligent misrepresentation claim (Count III).

The court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332 in that the parties are diverse and the amount in controversy exceeds $75,000.00. Venue is proper under 28 U.S.C. § 1391(a) in that a substantial portion of the events or omissions giving rise to plaintiff's claims occurred in this district and both defendants are subject to the court's personal jurisdiction.

In its amended complaint, plaintiff alleges that it purchased the outstanding shares of Data Systems, Inc. from Monarch and Pitney in early 1990 pursuant to a stock purchase agreement. At that time, Monarch was a subsidiary of Pitney. Plaintiff claims that representations and warranties that defendants made during negotiations and in the purchase agreement were false. Plaintiff's amended complaint contains the following claims: breach of contract (count I); fraudulent misrepresentation (count II); negligent misrepresentation (count III); declaratory judgment (count IV); rescission (count V); and reformation (count VI).

Both defendants seek dismissal of the same claims—counts I, III, and VI. Defendants advance essentially the same arguments in support of their motions. The court will address the motions collectively.

### I. LEGAL STANDARDS

Defendants seek dismissal of plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). In ruling on a motion to dismiss, the court must assume the truth of all well-pleaded facts in the plaintiff's complaint and view them in a light most favorable to the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *see Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984) ("[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true"). The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be construed liberally. *Id.; see* Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir. 1993); *Gas–A–Car, Inc. v. American Petrofina, Inc.,* 484 F.2d 1102 (10th Cir.1973). The issue in reviewing the sufficiency of plaintiff's amended complaint is not whether it will prevail, but whether it is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court may not dismiss a cause of action for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1148 (10th Cir. 1989).

The court is limited in its review of defendants' motions to dismiss. The court may consider only the well-pleaded allegations contained within the four corners of plaintiff's complaint. *Gagan v. Norton,* 35 F.3d 1473, 1474 n. 1 (10th Cir.1994), *cert. denied,* 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995). Although plaintiff need not state precisely each element of the claim, he must plead minimal factual allegations on those material elements that must be proved. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

### II. FACTUAL ALLEGATIONS

In January 1990, plaintiff entered into a stock purchase agreement with defendants and Data Systems to acquire all of the outstanding stock in Data Systems.[1] Section

---

1. The amended complaint contains no allegations concerning the type of business in which Data Systems engaged.

4.20 of the agreement contained defendants' and Data Systems' representation and warranty that Data Systems was not in default of any contract, agreement, or lease as set forth in Schedule 4.20.[2] In section 8.1, the parties agreed that all representations, warranties, and covenants contained in the agreement were true and correct as of the closing date of the stock purchase transaction.

On March 9, 1990, the parties closed on the stock purchase transaction. Carole St. Mark, chairman of Monarch and Data Systems and a representative of Pitney, signed the certification that all representations and warranties contained in the agreement were true and correct as of that date. This certification included the warranty that Data Systems was not in default of any contract listed in Schedule 4.20.

Additional factual allegations will be set forth as necessary in the court's discussion.

### III. ANALYSIS

Defendants contend that plaintiff cannot state a claim for relief on either its breach of contract or reformation claims because the Kansas statute of limitations bars the claims. Additionally, based on plaintiff's request for purely economic damages, defendants assert that plaintiff has not stated a claim under Kansas law for negligent misrepresentation. The court will address defendants' theories in turn.

### A. Statute of Limitations

Defendants argue that the Kansas five-year statute of limitations for written contracts bars plaintiff's claims for breach of contract and reformation.[3] See K.S.A. § 60–511(1). Under Kansas law, the five-year limitations period applies not only to actions for breach of contract, *see Brubaker v. Branine,* 237 Kan. 488, 493, 701 P.2d 929 (1985), but also to reformation claims. *See Conner v. Koch Oil Co.,* 245 Kan. 250, 255, 777 P.2d 821 (1989); *see also Ferrell v. Ferrell,* 11 Kan. App.2d 228, 230–31, 719 P.2d 1 (1986).

In the amended complaint, plaintiff alleges that it entered into the stock purchase agreement in January 1990 and closed the sale on March 9, 1990. A copy of the stock purchase agreement and its schedules are attached to plaintiff's amended complaint. Under section 4.20 of the agreement, defendants warranted that Data Systems was not in default of any contract or agreement listed under Schedule 4.20. St. Mark certified that as of March 9, 1990, all representations and warranties in the agreement were true and correct.

Plaintiff claims that defendants were in breach of the warranty provision in section 4.20 on the date of closing. One of the contracts included under Schedule 4.20 was between Data Systems and Image Data Systems Limited. In 1988, Data Systems had granted Image Data an exclusive license to use and market Data Systems' SET computer software in England, Scotland, Wales, Northern Ireland, Eire, Belgium, and Holland. The SET software allowed the user to design and produce certain types of point-of-sale materials. Under the terms of the exclusive licensing agreement, Image Data could manufacture and sell the software in its territory in exchange for paying royalties to Data Systems on the sale of the software. Pitney and Monarch were aware of this exclusive licensing agreement.

---

**2.** Plaintiff attached many of the documents pertinent to this action, including the stock purchase agreement, to the complaint. Because the documents are included as part of the pleadings, the court may consider them in the current motions without having to treat the motions as a request for summary judgment. See Fed.R.Civ.P. 12(b).

**3.** A federal court sitting in diversity jurisdiction applies the choice of law provisions of the forum state, which in this case is Kansas. See *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941); *Missouri Pac. R.R. Co. v. Kansas Gas &*

*Elec. Co.,* 862 F.2d 796, 798 n. 1 (10th Cir.1988); *Federated Rural Elec. Ins. Co. v. Nationwide Mut. Ins. Co.,* 874 F.Supp. 1204, 1207 (D.Kan.1995). Under Kansas law, determination of the limitation period is governed by the law of the forum, *lex fori. See Green v. Kensinger,* 199 Kan. 220, 223, 429 P.2d 95 (1967). The United States Supreme Court has held that a forum state may apply its statute of limitations because it is procedural. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 721–729, 108 S.Ct. 2117, 2121–2125, 100 L.Ed.2d 743 (1988).

On the closing date, but before the close of the transaction, Pitney requested and received from Data Systems a licensing agreement for the use of Data Systems' SET computer software. The licensing agreement allowed Pitney to use the software worldwide on a non-exclusive basis. At the same time, Pitney granted Monarch a non-exclusive worldwide sublicense to use the software. Because they could use the software anywhere in the world, the licenses granted Pitney and Monarch were in conflict with the exclusive territory granted in the Image Data license.

In February 1995, Monarch began using the software in England, which was part of Image Data's exclusive territory. Image Data claimed that Monarch's action was a breach of the exclusive licensing agreement between Data Systems and Image Data. Image Data informed plaintiff that it was terminating and/or rescinding the exclusive licensing agreement and that it would make no further payments under the agreement. Plaintiff avers that Data Systems breached the Image Data licensing agreement when it granted the license to defendants. Because this breach occurred prior to the closing date, plaintiff claims that defendants were in breach of the warranty provisions in sections 4.20 and 8.1 of the agreement at the time the sale closed on March 9, 1990.

Upon discovering the conflict between the Image Data license and defendants' licenses in February 1995, plaintiff made an immediate written demand on defendants to stop using the software in a manner inconsistent with the terms of the Image Data licensing agreement. However, plaintiff did not file suit against defendants for allegedly breaching the stock purchase agreement until January 22, 1997.

Under Kansas law, the clock on the statute of limitations for plaintiff's action on breach of contract begins ticking at the time defendants' allegedly breached the contract. *See Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 651, 545 P.2d 371 (1976); *Wolf v. Brungardt*, 215 Kan. 272, 279, 524 P.2d 726 (1974). Even though plaintiff alleges that it did not know that the breach existed at the time of closing, "plaintiff's knowledge of the breach or any injury caused thereby is irrelevant." *Rupe v. Triton Oil & Gas Corp.*, 806 F.Supp. 1495, 1498 (D.Kan.1992) (citing *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42, *modified on other grounds*, 247 Kan. 699, 803 P.2d 205 (1990)). In the amended complaint, plaintiff alleges that defendants breached the stock purchase agreement on the date of closing, March 9, 1990. Plaintiff did not file suit until January 1997, more than five years after the alleged breach. Consequently, the time limit under K.S.A. § 60–511(1) appears to bar plaintiff's breach of contract claim.

In an attempt to end-run the five-year statute of limitations, plaintiff asserts that section 12.1 of the stock purchase agreement enlarged the time in which it could bring the instant action. Section 12.1 provides for the survival of representations and warranties and states that:

> The representations and warranties of Seller, the Company and Buyer contained or provided for in this Agreement shall survive the Closing for all purposes for a period of one (1) year from and after the Closing Date, except that Seller's representations and warranties in section 4.10 shall terminate on the date the Post–Closing Adjustment is finally determined in accordance with Section 2.4 hereof and in Section 4.11 shall terminate on the expiration of all applicable statutes of limitation (after giving effect to any extension thereof by the taxpayer) and except to the extent of any claim of which written notice specifying in reasonable detail the nature and amount of the claim has been given prior to such expiration.

Plaintiff interprets section 12.1 as tolling and/or waiving the limitations period. Under plaintiff's interpretation, this section extended the five-year statute of limitation for an additional year. Thus, plaintiff argues that it had six years to bring the instant action. Plaintiff also claims that section 12.1 tolls the limitations period even further if plaintiff provided defendants with written notice describing the claim at any time during the six-year period. Consequently, plaintiff contends that its claim for breach of contract is not timebarred because it provided defendants with written notice of the breach of

607

contract claim within the alleged six-year limitations period.

■ Plaintiff's contention that Kansas law permits the contractual modification of the statute of limitations is a correct statement of the law. However, the plain meaning of section 12.1 is inapposite to plaintiff's interpretation. Putting aside plaintiff's strained interpretation, section 12.1 does not save the breach of contract claim because its terms constrict, rather than enlarge, the five-year limitations period.

■ The rules governing the interpretation of contracts in Kansas are well-settled.[4] If the terms of a written contract are unambiguous, "there is no room for rules of construction." *Simon v. National Farmers Organization, Inc.,* 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). An ambiguity exists only if the language in the contract's provisions is capable of "one of two or more meanings." *Id.* Determination of whether a contract "is ambiguous is a matter of law" for the court to decide. *Id.*

■ The court concludes that the language in section 12.1 is clear and unambiguous. With certain exceptions that are inapplicable in the instant action, section 12.1 provides for a one-year time period in which plaintiff may assert claims against defendants arising out of the representations or warranties made in the stock purchase agreement. To extend the one-year time-bar, plaintiff would have had to provide defendants with written notice of the claims within the one-year time period. Plaintiff did not provide such written notice. The court concludes that section 12.1 does not extend the applicable limitations period. Because plaintiff filed the breach of contract claim nearly seven years after the alleged breach, the Kansas five-year statute of limitations bars the claim. Count I is dismissed.

Likewise, plaintiff's claim for reformation of the stock purchase agreement is time-barred. In Count VI, plaintiff seeks reformation of defendants' non-exclusive worldwide licenses to eliminate the conflict with

the exclusive territory already granted in the Image Data license. In seeking reformation, plaintiff alleges that defendants obtained their licenses as a result of either fraud or mutual mistake. Defendants contend that the five-year statute of limitations applies to plaintiff's claim for reformation based on mutual mistake.

■ As the court previously noted, K.S.A. § 60–511(1)'s five-year limitation on written contract claims also applies to claims for reformation of a contract based on mutual mistake. *See Conner v. Koch Oil Co.,* 245 Kan. 250, 255, 777 P.2d 821 (1989); *Ferrell v. Ferrell,* 11 Kan.App.2d 228, 230–31, 719 P.2d 1 (1986). The running of the limitations period begins "from the date the mistake is made." *Siegel v. Hackler, Administrator,* 181 Kan. 316, 318, 310 P.2d 914 (1957).

■ Plaintiff alleges that the mistake in granting defendants' non-exclusive, worldwide license for use of the computer software occurred on the date of closing, March 9, 1990. For plaintiff's reformation claim to be timely, it was required to be filed before March 9, 1995. It was not so filed. Plaintiff's contention that section 12.1 of the stock purchase agreement extended the limitations period is unavailing for the reasons stated above. The court concludes that defendants are entitled to dismissal of plaintiff's claim for reformation based on mutual mistake. Whether plaintiff has stated a claim for reformation of the licenses on the basis of fraud remains for another day.

**B. Negligent Misrepresentation**

Defendants also seek dismissal of plaintiff's claim for negligent misrepresentation. They contend that plaintiff has failed to state a claim for relief because of the general rule in Kansas that recovery of solely economic losses in a negligence action is prohibited. In count III, plaintiff requests damages for the losses it suffered due to defendants' alleged negligent misrepresentations concerning the status of the Image Data exclusive license agreement.

4. Section 12.5 of the stock purchase agreement provides that Kansas law shall govern the construction and interpretation of the agreement.

The court applies Kansas law under Kansas' choice of law principles.

Kansas recognizes an action for negligent misrepresentation. *See Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 605, 876 P.2d 609 (1994) ("We hold that a cause of action for negligent misrepresentation ... is recognized in the state of Kansas.") *See also TBG, Inc. v. Bendis*, 841 F.Supp. 1538, 1568 (D.Kan.1993)(plaintiff was allowed to pursue claim that company's representatives made negligent misrepresentations in connection with a stock purchase agreement). However, courts generally have disallowed negligent misrepresentation claims where purely economic losses are sought to be recovered. *See, e.q., Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581 (10th Cir.1984)(Kansas courts would not allow recovery of solely economic losses in tort action for negligent misrepresentation); *Schweizer v. DEKALB Swine Breeders, Inc.*, 954 F.Supp. 1495, 1507 (D.Kan.1997) ("plaintiffs are restricted to an economic injury ... and thus do not sound in tort"); *Kelley Metal Trading Co. v. Al-Jon/United, Inc.*, 812 F.Supp. 185, 188 (D.Kan.1993) ("negligence action is unavailable if only economic damages are sought"); *Whittenburg v. L.J. Holding Co.*, 830 F.Supp. 557, 564–65 (D.Kan.1993) (plaintiffs not allowed to recover for only economic losses on negligent misrepresentation claim).

Defendants assert that the general rule against allowing recovery for purely economic damage should be applied in the case at bar. Defendants maintain that plaintiff's claim for economic damages is analyzed more properly under contract law principles. In *Daitom*, the Tenth Circuit Court of Appeals discussed whether contract or tort law theories applied to a plaintiff's claim for damages caused by a defective product. The *Daitom* court noted that generally a plaintiff must demonstrate physical injury or property damage to recover economic losses on a claim for negligent misrepresentation. Moreover, a tort claim for solely economic damages is supported "only when the nature of the defect, the type of risk, and the manner of injury derive from the unreasonable dangerousness of the product." 741 F.2d at 1582. The court reasoned that if the product was not unreasonably dangerous, there was "no need to impose a non-contractual duty" because protection exists for the buyer through

"bargaining for a warranty." *Id.* Subsequent cases in this district have applied consistently the *Daitom* rule in the context of product liability and sale of goods actions. *See, e.g., Kelley*, 812 F.Supp. at 188 (tort claim for economic damages dismissed in action on defective wire reclamation furnace); *Whittenburg*, 830 F.Supp. at 564–65 (judgment granted on negligent misrepresentation claim seeking economic damages for differential in value of Lear jet between time of contract and time of possession); *Nature's Share, Inc. v. Kutter Products, Inc.*, 752 F.Supp. 371, 382 (D.Kan.1990) (summary judgment granted on tort claim seeking only economic damages for defective bird seed); *Ritchie Enterprises v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1052 (D.Kan.1990) (negligent misrepresentation claim on sale of computers dismissed because the plaintiff sought only economic losses).

Plaintiff agrees that there is a general prohibition against recovery of purely economic losses for claims involving defective products or the sale of goods. However, plaintiff argues that claims arising from the stock sale of a company are an exception to the general rule.

Plaintiff relies on *TBG, Inc. v. Bendis*, 841 F.Supp. 1538 (D.Kan.1993), which is factually analogous to the instant action. In *TBG*, the plaintiff acquired a computer software company that specialized in developing and marketing computer information systems to hospitals and health care providers. The defendant included representations and warranties in the stock purchase agreement that addressed the terms of existing contracts, the completion status of the company's products, and the status of alleged sales of the company's products. The plaintiff claimed that the defendants misrepresented the above items and sought recovery for its economic losses.

In his opinion, Judge O'Conner noted that there is a distinction between negligent misrepresentation cases involving the sale of a company and other cases involving claims "such as those alleging negligent design or manufacture of a product." 841 F.Supp. at 1568. Specifically, Judge O'Conner opined that:

[t]he practical effect of extending the holding in [defective product cases] to the instant case would be to exempt directors and officers from liability for negligent misrepresentations about the corporation made in connection with the sale of the corporation's stock, simply because the plaintiff sustained only economic loss. It is, indeed, difficult to envision damages other than those of a purely economic nature resulting from such a transaction.

*Id.* The court held that the "requirement that a plaintiff must show physical injury or property damage to recover accompanying economic loss, is inapplicable to the instant case." *Id.*

*TBG* relied on the Kansas Supreme Court's opinion in *EF Hutton & Co. v. Heim,* 236 Kan. 603, 694 P.2d 445 (1985). *EF Hutton* involved a claim for negligent misrepresentation based on the loss that an individual stock purchaser suffered due to a stockbroker's negligence. The court addressed the damages that the plaintiff could recover, and held that:

[i]n an action against a broker for negligently reporting a stock or commodity transaction and where there was no wrongful conduct on the part of the broker (other than negligence), the proper measure of damages is the same as in any negligence action which does not involve intentional or gross and wanton conduct.

*Id.* at 615–16, 694 P.2d 445.

In the case at bar, the court finds TBG both instructive and persuasive. The court adopts in full TBG's analysis on negligent misrepresentation claims involving purely economic damages that flow from the stock sale of a company. Moreover, while EF Hutton did not address specifically whether purely economic damages could support a claim for negligent misrepresentation, the court believes that the Kansas Supreme Court would adopt such a rule on facts similar to the case at bar.

Equally unavailing is defendant Monarch's contention that plaintiff's negligent misrepresentation claim should be dismissed because it is based on the same facts that give rise to plaintiff's breach of contract claim. The Tenth Circuit Court of Appeals has held that concomitant tort and contract claims based on the same facts are not allowed. *Isler v. Texas Oil & Gas Corp.,* 749 F.2d 22, 24 (10th Cir.1984). The Isler court noted that where a contract defines the rights of the parties, a party is precluded from asserting an "extra-contractual tort duty." *Id.*

In response, plaintiff argues that its negligent misrepresentation claim and breach of contract claims are mutually exclusive. Plaintiff contends it is suing not only for defendants' representations in the stock purchase agreement, but also representations that defendants allegedly made that induced plaintiff to enter into the agreement. Specifically, plaintiff alleges in paragraph 41 of the amended complaint that defendants intended their representations "to influence the Data Systems stock purchase transaction." Giving plaintiff's allegations a liberal construction, the court concludes that plaintiff has pleaded separate claims for breach of contract and negligent misrepresentation. That is not to say, however, that upon further development of the facts, plaintiff will be able to withstand a properly supported motion for summary judgment on this issue. Accordingly, the court concludes that plaintiff may proceed on its negligent misrepresentation claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motions to dismiss (Docs. 13 & 16) are granted with respect to plaintiff's breach of contract claim and claim for reformation based on mutual mistake (Counts I and VI), and denied with respect to plaintiff's negligent misrepresentation claim (Count III). Count I is dismissed. Count VI remains only on plaintiff's claim for reformation based on fraud.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**